## Case No. 13,296.

STANTON et al. v. ALABAMA & C. R. CO. et al.

[2 Woods, 506.] [1]

Circuit Court, S. D. Alabama. Dec. Term, 1875.

RAILROAD COMPANIES — RECEIVERS — AUTHORIZED TO BORROW MONEY—CERTIFICATES—COMMERCIAL PAPER—LIABILITY OF RECEIVERS FOR MALFEASANCE—EXCEPTIONS TO MASTER'S REPORT.

1. Where a decayed and dilapidated railroad and its appurtenances are in the possession of receivers by authority of a decree of court, made in a cause brought by trustees of a first mortgage to foreclose the same, and it is necessary to borrow money in order to pre-

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

serve the road and complete some inconsiderable portions thereof, and to put it in condition for the transaction of its business, the court may authorize the receivers to borrow money for such purposes, and make the sums so borrowed a lien on the railroad property superior to that of the first mortgage.

[Cited in Atkins v. Petersburg R. Co., Case No. 604; Credit Co. v. Arkansas Cent. R. Co., 15 Fed. 49, 50; Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 38.]

[Cited in Hale v. Nashua & L. R. Co., 60 N. H. 341; Hoover v. Montclair & G. L. Ry. Co., 29 N. J. Eq. 4; McLane v. Placerville & S. V. R. Co., 66 Cal. 624–628, 6 Pac. 759, 762; Vermont & C. R. Co. v. Vermont Cent. R. Co., 50 Vt. 578.]

2. The order of the court authorizing the receivers to borrow money prescribed that they should issue for the money borrowed, certificates payable in ten years, bearing eight per cent. interest, payable semi-annually, and that the same should not be sold or disposed of for less than ninety cents on the dollar. The receivers issued certificates payable to bearer, and which referred to the order of the court by authority of which they were issued. Held, that such certificates were not commercial paper, good in the hands of bona fide holder, no matter what vice or infirmity might attend their original issue.

[Cited in Union Trust Co. v. Chicago & L. H. R. Co., 7 Fed. 515; Central Nat. Bank v. Hazard, 30 Fed. 486; Stanton v. Alabama & C. R. Co., 31 Fed. 587.]

[Cited in brief in Humphreys v. Allen, 101 Ill. 497. Cited in McCurdy v. Bowes, 88 Ind. 585.]

3. They were good for the amount of money actually paid for or advanced on them to the receivers in accordance with the terms of the order of court.

[Cited in Stanton v. Alabama & C. R. Co., 31 Fed. 587.]

4. Persons who bought said certificates, or advanced money on them to the receivers, were not bound to see that the money was applied to the purposes of the trust.

[Cited in Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 461, 6 Sup. Ct. 824.]

[Cited in brief in Turner v. Peoria & S. R. Co., 95 Ill. 136.]

5. When such certificates were hypothecated by the receivers to secure moneys advanced to them, and their face value greatly exceeded the sums borrowed, the court ordered that the certificates not necessary at ninety cents on the dollar to secure the sums so advanced should be returned to the receivers.

6. Receivers who willfully and corruptly exceed their powers are liable for the actual damage sustained by reason of their misconduct, but for nothing more.

7. Exceptions to the report of a master should be precise, and raise well defined issues. When they are vague and general, and require of the court the performance of duties which properly belong to the master and counsel, they will be overruled.

[Cited in Jones v. Lamar, 39 Fed. 586; Sheffield & B. Coal, Iron & Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 344.]

[8. Cited in Taylor v. Life Ass'n of America, 3 Fed. 470, as an instance in which a nonresident has been appointed to a receivership.]

In equity. The bill in this case was filed by the trustees of a first mortgage deed executed by the defendant railroad company to

secure its first mortgage bonds for the purpose, among other things, of bringing to sale the property conveyed by the mortgage, and to the end that the proceeds of the sale might be applied to the payment of the liens upon said property according to their priority. Before this time, trains had been running upon the road from one terminus to the other, but a portion of the road had been built in a hasty and temporary manner, and needed to be completed in a substantial and permanent way, in order to insure the safety of the trains. Such proceedings were had in the cause, that on the 26th day of August, 1873, a decretal order was made by Mr. Circuit Justice Bradley, whereby Lewis Rice of Massachusetts and Wm. J. Haralson of Alabama were appointed receivers to take possession and control of the mortgaged property, with authority "to put said railroad and other property in repair, and to complete any incompleted portions thereof: to procure rolling stock, machinery and other necessary things for operating the same, and to operate the same to the best advantage," and save and preserve the same for the benefit of the first mortgage bondholders, and others having liens thereon.

These receivers were, by the same decretal order, authorized to borrow or advance moneys, not exceeding $1,200,000, which were to be a first lien on said mortgaged property prior to all others, and to be paid before the said first mortgage bonds. For the money so raised, for the purposes aforesaid, the receivers were authorized to issue certificates, the principal payable in ten years from the first day of September, 1873, with interest payable semi-annually, at a rate not exceeding eight per cent. per annum. These certificates were not to be sold or disposed of for less than ninety cents on the dollar of their face value, and were not to be issued until countersigned by a majority of the trustees for the first mortgage bondholders, without which countersigning they were not to be entitled to the lien and priority aforesaid. Under this order, the receivers went into possession of the road, and managed the same, and issued and disposed of nearly all the certificates authorized to be issued by them. On the 23d of January, 1874, this court ordered, adjudged and decreed that the entire line of said defendant company's road, as the same was described in the mortgage deed, extending from Chattanooga, Tenn., through Georgia and Alabama to Meridian, Miss., with all accessories thereto at the time of sale, should be sold at public vendue by the commissioners named in the decree of the court.

The decree of the court further directed, that in case of a sale the proceeds should be applied—First. To the payment of the expenses of the trust, and the costs of suit, etc. Second. To the payment of all taxes, assessments, charges and liens prior in law to the lien of the said mortgage deed, and Third. To the payment of the first mortgage bonds, with their unpaid interest coupons. Fourth.

The residue. if any, to be applied in such order and priority of distribution as the court should thereafter establish.

This decree also directed a reference to Joseph W. Burke, Esq., to report in detail all the amounts necessary and proper to be paid out of the proceeds of the sale under the four heads above specified; and the sale of the road was postponed to await the coming in of the report. On the 24th day of August, 1874, by a decretal order of Mr. Circuit Justice Bradley, which recited that the operation of the railroad, which was the subject of the litigation in this case, had nearly ceased in consequence of disasters from the elements and want of necessary repairs, and that said road and its equipments were fast deteriorating in value, the possession of the said railroad and its appurtenances was turned over to the trustees of the said first mortgage deed, namely, Daniel N. Stanton, John C. Stanton and Francis B. Loomis. the complainants in this cause. This order declared that the trustees "are authorized, for the purposes before-mentioned, to raise any moneys which may be advanced to them (beyond the advances which have already been made thereon) upon any of the certificates issued or authorized to be issued under the decree of August 26, 1872, which certificates, for all amounts justly due thereon, according to the final decree in this cause made on the 23d of January, 1874, or which may become due thereon by such further advancements, are hereby declared to be entitled to priority over the said first mortgage bonds, and all other claims against said railroad and other property, as declared in said final decree, and the sale to be made by the masters named in said decree shall be subject to the lien of said certificates," etc.

On the 18th of June, 1874, Mr. Burke, the master, filed his general report, and on the 31st of May, 1875, his supplemental report, under the decree of reference heretofore recited. Afterwards, and before any exceptions to these reports were heard, on the 11th of June, 1875, the persons representing the first mortgage bondholders, the trustees of said mortgage and the holders of receivers' certificates, issued by the receivers appointed in this cause, entered into an agreement which. on the day last named, was made by Mr. Circuit Justice Bradley an order of the court. This order recited that there was some dissatisfaction with the reports of Master Burke, and provided for the appointment of Mr. Philip Phillips, of Washington City, as master, to enquire into, and with power to settle the various matters of reference involved in the case and ordered by the decrees of the court, which settlement, it was declared, should be final between the parties to the said agreement when confirmed by the court. It was further agreed and decreed that if any of the receivers' certificates were objected to by either party, the master should inquire and report whether the same were issued in accordance with the orders in the cause, what dis-

position was made of the same, whether said disposition was in conformity to the said orders, and which in his opinion should be allowed and which rejected. On the 8th of September, 1875, Mr. Phillips filed his report, to which a large number of exceptions were taken by counsel for various persons interested; and on these, the case was submitted to the court. Most of the exceptions raised questions of fact, and they are not noticed in that part of the opinion of the court which follows.

John A. Elmore, for trustees as complainants.

E. H. Grandin, also for trustees, and for J. C. Stanton individually and as receiver.

J. Q. Smith, for complainants in the bill.

Wm. Boyles, for F. S. Gwyer, a holder of receivers' certificates.

S. F. Rice, for Rice and Haralson, receivers.

V. A. Gaskill, for trustees D. N. Stanton and J. C. Stanton, and J. C. Stanton as receiver.

Robert H. Smith, R. I. Smith, and Thomas W. Snagge, of London, England, for the council of foreign bondholders, a corporation of London, in the kingdom of Great Britain; for certain persons known as the Frankfort committee of the Alabama & Chattanooga Railroad Company and other persons, holders to the amount of $3,200,000 of the first mortgage bonds issued by the railroad company.

WOODS, Circuit Judge. The most important exceptions to the report of Master Phillips have been filed by the solicitors of the contesting first mortgage bondholders, and these will be first considered and disposed of in their order.

The first of these relates to what are designated the hypothecated receivers' certificates. In order to understand the exception, it is necessary to set out briefly the facts as stated by Master Phillips, and his conclusions of law thereon: "The complainants in the bill," says the master's report, "were the trustees of the first mortgage bondholders. The bill prayed that the court would determine the various matters in dispute; that they would appoint receivers with full power to borrow money, and with such other powers as might be necessary to cause the property to be protected, improved and administered until the further order of the court; and that in the meantime the said road should be operated, and the business of the company be prosecuted, to the greatest advantage for the benefit of all interested. The solicitors for the second mortgage bondholders, who were defendants in the cause, united in the application for the appointment of receivers as prayed for. There were also annexed to the bill numerous affidavits showing the dilapidated condition of the road, and the absolute necessity for the preservation of the property that the order

should be made. Under these circumstances. Mr. Circuit Justice Bradley made the decretal order of August 26, 1872, appointing Rice and Haralson receivers with powers as prayed for. The order provides, 'that all moneys which may be raised by the receivers by loan, or which may be advanced by them for the purposes aforesaid, not exceeding the sum of $1,200,000, shall be a first lien, to be paid out of the proceeds of said property.' Having thus designated the amount that might be raised, the order proceeds to provide the ways and means: 'The receivers shall issue certificates for the money which they may thus raise by loan, and the loans shall be made on such terms as the receivers may deem expedient, provided that the said certificates shall not be disposed of for less than ninety cents on the dollar; and provided, also, that the interest shall not be allowed at a greater rate than eight per cent.' This is followed with further direction, 'that the principal of any moneys so to be loaned to the said receivers shall be payable at the expiration of ten years from the 1st of September next, at some convenient place to be named therein.' The power of the court to make this decree is not now open to inquiry, but the master is very confident in the opinion that if any case could ever justify the exercise of such a jurisdiction, the one before him imperiously called for its exercise. Under this order, the receivers issued 1,200 certificates, numbered from one to twelve hundred inclusive, for one thousand dollars each. They are made payable to bearer, but on their face they recite that they are made 'under and in pursuance of an order of Judge Bradley, of the 26th of August, 1872, in a suit in equity, in the circuit court of the United States, at Mobile, for the district of Alabama, Fifth judicial circuit, in which said Seth Adams et al., trustees, are complainants, and the Alabama & Chattanooga Railroad company et al., are defendants.' These certificates thus conclude: 'In witness whereof, the said receivers in pursuance of the order aforesaid, and not otherwise, have signed these presents on this fifth day of September, 1872.' They are thus indorsed: 'We do hereby certify that this is one of the series of certificates of indebtedness of $1,000 each, and numbered consecutively from No. 1 to 1,200, both numbers inclusive, amounting in the whole to $1,200,000, and the same is now countersigned by us in pursuance of the order of court, in the cause pending in the United States circuit court for the district of Alabama, as mentioned herein.'" This was signed by the trustees.

It was argued that these certificates, being payable to bearer, were negotiable instruments by the law merchant, and that the parties who had in good faith purchased them in open market, held a title which could not be invalidated by any illegality in their disposition by the receivers. To

sustain this proposition, the following cases were relied on: Woods v. Lawrence Co., 1 Black. [66 U. S.] 386; City of Lexington v. Butler, 14 Wall. [81 U. S.] 512; Mercer Co. v. Hackett. 1 Wall. [68 U. S.] 83; Grand Chute v. Winegar, 15 Wall. [82 U. S.] 356; Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 203; Lynde v. The County, 16 Wall. [83 U. S.] 7; Meyer v. Muscatine, 1 Wall. [68 U. S.] 385; Lee Co. v. Rogers, 7 Wall. [74 U. S.] 181. This view the master refused to adopt, but held that the title of every holder was dependent on the fact whether the certificate was disposed of by the receivers in conformity with the order of the court, and that it was not to be regarded as falling under the law of ordinary negotiable paper. His report declares: "These securities until within a few years were unknown; they are all directed to be issued by special appointees of the court, clothed with special and limited authority, and in relation to a particular case. On their face they refer to the particular power thus conferred, and to the particular case then pending in the court. This is a sufficient notice to put a prudent dealer on inquiry. The order imperatively declares that the certificate should not be disposed of at less than ninety cents on the dollar. Any act by the receivers which disposes of these at less than ninety cents is ultra vires. The first taker would derive no title from such a transaction and a subsequent holder would occupy no better position. These certificates may be likened to the English debentures of a business corporation, as to which it has been well settled that, when issued by the directors without due authority under the seal of the company, they cannot be enforced by members of the company who accepted them after being present at the meeting when the irregular issue was sanctioned, and a bona fide transferee of such debentures from such shareholders will stand in no better position, nor can strangers or their assignees enforce them where they were accepted by the first holders, with knowledge that the condition on which they were issued had not been fulfilled. In re Magdalena Steam Nav. Co., Johns. Eng. Ch. 690. In very many instances, as shown by the evidence, money was advanced in New York to the receivers, for which they executed their notes, dating them at Boston to avoid the usury laws, and stipulating to pay, exclusive of 8 per cent. interest, 2½ per cent. per month, with a pledge of certificates often exceeding double, and sometimes treble the amount loaned, with authority to sell the certificates at public or private sale without notice. The commissioner is of the opinion that such a pledge was wholly unauthorized. The proviso that the certificates shall not be disposed of at less than ninety cents is certainly violated by pledging twenty certificates for a loan of $10,000. Such a hypothecation deprives the receivers of their control over the cer-

tificates; it is a disposition which defeats the object of the order, which is to enable the receivers to obtain for the use of the road $1,000,000, if so much were needed, by the use of $1,200,000 in certificates. To hold such a disposition to be legal would confer a valid title upon all who claim under the first taker, and thus the lien of the first mortgage bondholders would be displaced in charging the trust estate with double or treble the amount of money actually advanced for its betterment. While entertaining these views, the commissioner is of opinion, that to the extent of moneys actually advanced to the receivers, and applied to the benefit of the trust estates, they are entitled on equitable principles to be allowed. It has been decided in England in accordance with the views here expressed that when money has been advanced on irregular securities and has been applied for the benefit of the company by the directors, and the shareholders have acquiesced in the transaction, the company and the shareholders are precluded from disputing their liability to pay the advance. And when a payment of six per cent. interest had been made upon the debentures without objection, it was held that although the holders could not recover upon the debentures, they were entitled to six per cent. interest on their advances. De Winton v. Mayor, etc., of Brecon, 26 Beav. 533. Each claimant is therefore allowed the amount of money actually advanced by him upon his delivery of the note or other evidence of indebtedness held by him on this account, and also all the remaining certificates which had been given to him in pledge after retaining as many of them at ninety cents as will extinguish the amount found due to him, the coupons belonging to said certificates being exscinded therefrom, so as to conform to the computation of interest made on such indebtedness. If the views herein expressed meet with the approbation of the court, then to give full effect to them and bring this litigation, so injurious to all interested, to a speedy conclusion, it is recommended that an order be made fixing a day for the completion of these settlements, and in default of settlement on that day, the trust estate shall be declared freed from all liability thereon."

The bondholders have excepted "to the allowance of each and every certificate hypothecated, and to every allowance as a lien prior to the first mortgage debt of any sum raised by the hypothecation of said certificates, and to the allowance and payment of any of said several sums on receivers' certificates at 90 cents, on the dollar." The grounds of this exception are that the transactions of the receivers in hypothecating certificates were unlawful, beyond the powers of the receivers, and in violation of the orders of the court, were usurious and in fraud of the trust, and that it is not shown that the moneys raised by the several transactions were applied to

the purposes specified in the orders of the court or to the benefit of the trust; were without proper consideration. and that the master by his report has attempted to make a new contract between the parties and the effect of his ruling is improperly to charge thê trust fund with liens prior to the first mortgage.

I do not think that any of these objections to the conclusions of the master on this subject are well taken. I entirely agree with the master that these certificates have not the quality of negotiable instruments by the law merchant. In my judgment, power conferred upon receivers to issue certificates does not authorize the issue of a bond or other negotiable instrument which shall be good in the hands of a bona fide holder for value, no matter what vice or infirmity may attend its original creation. The paper issued must be governed by the authority under which it is issued and not by the form the receivers may choose to give it. In order to get a correct view of the subject, we must recur to the order of the court authorizing the receivers to borrow money and issue certificates. It will be seen by the decree already quoted that the receivers were authorized to raise by loan or to advance themselves a sum not exceeding $1,200,000, which should be a first lien, prior to all others on the trust property; that they were to issue certificates for the money thus raised. by loan, and that the loan should be made on such terms as the receivers might deem expedient, "provided that the certificates should not be sold at less than 90 cents on the dollar of their face, and should not bear a greater interest than eight per cent. per annum, payable half yearly, and that the certificates should not be issued until countersigned by a majority of the trustees for the first mortgage bondholders, without which countersigning they should not be entitled to the lien and priority aforesaid." If the report of the master is adopted, the loan of money made on these certificates will be secured for the benefit of the trust, in full compliance with the terms of the decretal order of the court. namely, at 8 per cent. per annum, payable half yearly on certificates having ten years to run, and if the fund already raised does not reach the amount authorized by the court to be borrowed, a sufficient number of certificates will be released to raise the amount ordered. Unquestionably the receivers had no right to hypothecate the certificates, or to agree to pay more for money borrowed than eight per cent., payable semiannually. They had no authority to borrow money to be paid before the expiration of ten years from the first of September, 1872, the date when the certificates were to fall due. But there was no period fixed during which the money must of necessity be borrowed; they could borrow it as needed, at any time within the ten years. If the receivers were now in office they might, under the order of the court already referred to, borrow money.

on any certificates in their hands, to be repaid according to the terms of the certificates, on the first of September, 1882. In fact, under the decretal order of August 24, 1874, made by Mr. Circuit Justice Bradley, the trustees of the first mortgage to whom the railroad was ordered to be delivered, as quasi receivers, were authorized to raise money on any certificates remaining in their hands. The result therefore of the ruling of Master Phillips is to effect a loan of money for the benefit of this trust estate on the precise terms authorized by the order of the court, and to put in the hands of the trustees as receivers, certificates on which the residue of the loan authorized by the court can be raised. This cannot be said to be the making of a contract by the master. The terms of the loan have long since been fixed by the court, and if the holders of hypothecated certificates choose now to come in and assent to these terms, the bargain is of their and not of the master's making.

I do not think that the lenders of money on hypothecated certificates were bound to look after the application of the money loaned to the receivers. They can be compelled to allow their money to go on the terms prescribed by the orders of the court; that is, to consent to a loan payable September 1, 1882, at eight per cent. per annum, payable semiannually. and to take certificates as evidence thereof, at not less than ninety cents on the dollar. But their money cannot be confiscated, because receivers, appointed by the court at the instance of the trustees, for the bondholders, may have been unfaithful to their trust. But in my judgment, the question raised by this exception has been already settled by this court. The decretal order of Mr. Circuit Justice Bradley, made August 24, 1874, already referred to, by which the trust property was turned over to the trustees as quasi receivers, among other things, declared: "And it is further ordered that said trustees, having filed said bond and taken possession as aforesaid, shall be authorized for the purposes before mentioned to raise any moneys which may be advanced to them, beyond the advances which have already been made thereon, upon any of the certificates issued or authorized to be issued by the receivers in this cause, under the decree of August 26, 1872, which certificates for all amounts justly due thereon, according to the final decree in this cause, made on the 23d day of January last, or which may become due thereon by such further advances, are hereby declared to be entitled to priority over the said first mortgage and all other claims against said railroad and other property as declared in said final decrees, and the sale to be made by the masters named in said decree, shall be subject to the lien of said certificates," etc. The purpose of this order is unmistakable to recognize "advances" made on certificates already issued. or which were authorized to be, but had not yet been issued. The amounts

of the advances were not fixed. They might be ninety cents on the dollar, or a smaller sum. Whatever they were they were declared to be the first lien upon the trust property. This question therefore, having been passed upon by one of the judges of this court, will be considered as settled until reversed in an appellate tribunal. The exception under consideration must be overruled.

The next exception to be noticed is to so much of the report as refers to the account of Rice and Haralson, receivers. The grounds of exception are (1) the refusal of the master to charge Rice and Haralson with the face value of 726 certificates hypothecated by them; (2) his refusal to charge said certificates at ninety cents on the dollar; and (3) the allowance to the auditor, treasurer, and general superintendent and other officers and agents of extravagant salaries and compensation, the same being included in the items allowed the receivers. The overruling of the exception just passed upon, in effect disposes of the first two grounds on which this exception is based. If the trust property is charged only with the amounts actually advanced on the hypothecated certificates, and the certificates not necessary to secure the amounts thus advanced are ordered to be returned to the trustees, there is no rule of law or equity by which the receivers should be charged, either with the face value or ninety cents upon the face value of the hypothecated certificates. The damage, if any, sustained by the conduct of the receivers, is not to be measured in the manner suggested by this exception. If they acted in good faith, but under a mistaken view of their powers, they would perhaps not be liable at all. If they willfully and corruptly exceeded their powers, they should only be held liable for the actual damage sustained by their conduct, and they are not chargeable by an arbitrary rule like that suggested by the exception. In re Skerrett, 2 Hogan, 192. The other ground upon which this exception is based is, that extravagant salaries were allowed the auditor, treasurer, and general superintendent, and other officers and agents employed by the receivers. This branch of the exception is too vague and general, and requires of the court the performance of duties which properly belong to the master and counsel. Exceptions should be precise, and raise well defined issues. The exceptor in this instance should have stated what officers were referred to, and what salaries were allowed them. Instead of this, the exception is launched at the compensation generally of the auditor, treasurer, general superintendent and all other officers and agents of the receivers, without stating what salary or compensation was allowed to any one of them. It is impossible for the court to pass intelligently on such an exception, and no rule of equity practice requires the court to make the effort to do so. The entire exception is therefore overruled.

[See Case No. 13,297 and 31 Fed. 585.]