THE BANK OF MONTREAL v. THE C., C. & W. R. CO. ET AL.

1. **Receiver: POWERS OF.**   An order of court appointing a receiver of a railroad company provided that he should "do and perform all the acts and things necessary to be done and performed to construct and complete said line of railroad," and that he should be authorized to borrow such sums of money as were necessary for the further construction, equipment, and final completion of the road, and to issue his debentures or certificates therefor, and that such certificates, "whether for money borrowed, material furnished, labor performed, or on account of contracts made by him on account of the construction of the road," should be treated as receiver's indebtedness, and constitute a first lien on the road: *Held,* that the receiver was not authorized to issue certificates in payment of material until it had been furnished, and having issued his certificates for material contracted to be delivered, but which in fact never was, such certificates were void.

2. ———: ———: NEGOTIABILITY.   Such certificates reciting upon their face that they were issued under an order of court, the holder was chargeable with notice of the order, and in taking them was bound to inquire whether the receiver had power to issue them in payment for material to be delivered at a future time.

*Appeal from Clinton District Court.*

FRIDAY, JUNE 7.

THIS action was commenced by the Joliet Iron and Steel Company against the corporation defendant in November, 1875, to enforce an alleged lien. E. H. Thayer was appointed receiver of the company.

In July, 1876, the corporation, receiver, and certain other parties being represented and before the court, the following order was entered of record:

"That the said receiver be and is hereby authorized and empowered to proceed to complete and build all the unconstructed portions of the line of railroad of said Chicago, Clinton & Western Railroad Company, from Clinton, in Clinton county, Iowa, to Iowa City, in Johnson county, Iowa, and to put those portions of said line in good order and condition, to be operated as a railroad. All of said construction and work said receiver is authorized to have done directly under his own management, or by contract of the whole of said work, or in parts thereof as may be in his judgment most advantageous and expedient, and to do the same as early as practicable. And said receiver is further authorized and directed to do and perform all the acts and things necessary to be done and performed to construct and complete said line of railroad as above directed, and for such purpose the said receiver is hereby authorized and empowered to borrow, on such terms as to time of payment and rate of interest as in his judgment may seem advisable, such sum or sums of money, and to make such indebtedness, as shall be necessary for the further construction, equipment and final completion of said road, not to exceed eight thousand dollars per mile upon the whole line of said road, completed, and to be completed, and to make and issue to the person or persons of whom said money may be borrowed or to whom such indebtedness may be due, but only such as is incurred by said receiver, his deben-

tures or certificates, with the interest expressed in their body, or in coupon or interest warrants attached, signed by him as such receiver, but not personally; and it is further ordered and decreed that such debentures and certificates issued by said receiver, in pursuance of the order herein made for the construction and completion of said road, whether for money borrowed, material furnished, labor performed, or on account of contracts made by him for or on account of the construction or completion of said road, or any part thereof, shall be, and they are hereby, adjudged to be and shall be held and treated as receiver's indebtedness, and as such are decreed and adjudged to be a first lien, for the principal and interest thereof, upon the entire line of said railroad, including the road-bed, iron, right of way, rolling stock, taxes, income and earnings of said road, and all the property, rights, interests and franchises of said railroad company now in existence or hereafter accruing or belonging to said railroad company prior to any other liens or claims thereon whatsoever."

Afterward the receiver, under said order, issued certain certificates, some of which having been acquired by the South St. Louis Iron Company, that company filed its petition of intervention to establish its lien, and have the property sold to satisfy the same.

In November, 1877, the plaintiff, claiming to be the owner of certain of said certificates, filed its petition of intervention asking the establishment of its lien, and that the property be sold to satisfy the same. The certificates owned by the plaintiff, amounting to twenty-five thousand dollars, were all of the form following:

"RECEIVER'S CERTIFICATE.

"*No. 28.* $5,000.

"*Office of the Receiver of the Chicago, Clinton & Western Railroad, Clinton, Iowa, January 20, 1877.*

"This is to certify, that there is due on July 16, 1877, to the Joliet Iron and Steel Company, or bearer, from Edward

H. Thayer, as receiver (but not personally) of the Chicago, Clinton & Western Railroad, appointed by the District Court of the State of Iowa, in and for Clinton county, five thousand (5,000) dollars, with interest thereon from this date at the rate of seven per cent per annum, on account of indebtedness incurred by said receiver. This obligation is issued under and by virtue of certain provisions of an order duly entered by the District Court of Clinton county, Iowa, on July 27, 1876, and is one of the series of receiver's certificates authorized to be issued by such order, and by virtue thereof constitutes a first lien upon the said line of railroad, its appurtenances, franchises, and income, being for iron furnished for constructing said road. Payable at the Third National Bank, Chicago, Illinois.

"EDWARD H. THAYER,<br>"Receiver of the Chicago, Clinton & Western Railroad."

The answer to the petition of intervention of the plaintiff was filed by the South St. Louis Iron Company, alleging that the certificates owned by the plaintiff "were not issued by the receiver in payment of any money borrowed, nor in payment of any indebtedness due to the payee mentioned in said certificates, or any other person, but said certificates (and others of the same date) were issued and delivered to the Joliet Iron and Steel Company without any delivery of any of the property described in said contract to the receiver, and without any right existing for him to demand or receive any portion of said property, * * * and that at the time said contract was made the Joliet Iron and Steel Company was, in fact, insolvent, and ever since has been insolvent."

A copy of the contract between the receiver and the Joliet company is attached to and made a part of the answer, from which it appears the contract was made in January, 1876, for the delivery of certain iron rails by the company to the receiver, in March, April and May, 1877. The certificates were issued on the same day the contract was entered into,

in payment therefor, but no part of the rails were ever delivered or tendered to the receiver.

A demurrer to the answer was overruled, and plaintiff appeals.

*E. S. Bailey*, for appellant.

*Cook & Richman*, for the intervenor, appellee.

SEEVERS, J.—We have been advised that the authority of the court to make the order in question is denied by certain parties in interest who are not represented on this appeal, nor are we advised as to the facts and circumstances before the court when the order was made, therefore that question has not been considered.

1. RECEIVER: powers of.

The authority of the receiver to issue the certificates owned by the South St. Louis Iron Company is not questioned. The only contested matter before us is as to his authority to issue and the validity of those owned by the plaintiff. A solution of this question requires a consideration, to some extent at least, of the nature and extent of the powers of a receiver, and the construction of the order of the court.

Counsel for the appellant insist that, if a court undertakes to build a railroad by an order entered of record, and directs a receiver to superintend such construction, and authorizes him to do and perform all acts and things necessary to be done to build the road; to borrow money, make contracts, incur debts and issue certificates; that such order would be subject to the same rules of construction as a like power granted by the board of directors to a superintendent of construction. The correctness of this proposition, thus broadly stated, admits of serious doubt.

Ordinarily the duties of a receiver of a railroad only "comprise the operation and management of the road, the payment of current expenses, and the application of the residue of the earnings and receipts to the extinguishment of the indebtedness, to secure which the receiver was appointed.

The receiver is seldom authorized to enlarge the operations of the company, or to extend its line of road, his functions being usually limited to the management of the property in its existing condition, for the protection of creditors, and subject always to the supervision of the court." High on Receivers, § 390.

As to such matters the receiver, no doubt, possesses all the incidental and necessary power to effectuate the object of his appointment, in the absence of any specific direction from the court. The details of the business intrusted to him must of necessity be left to his discretion. But he is uniformly regarded as an officer of the court, and, being such, the fund or property intrusted to his care is regarded as in the custody of the law, the "court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred by the order of his appointment, or such as are derived from the established practice of courts of equity." High on Receivers, § 1.

In construing the order it must be borne in mind it confers upon the receiver extraordinary and unusual powers, which, however, it will be assumed were necessary and proper for the preservation and protection of the property committed to his charge.

He was authorized to "put those portions of said line already constructed or partly constructed in good order and condition, and to this end he was empowered to borrow money and incur indebtedness which was made a 'first lien' on the entire line of said railroad, including the road-bed, right of way, rolling stock, taxes, income and earnings of said road," including all after acquired property.

Under such a grant we are constrained to believe the claimed right or power should appear in express terms, or possibly it would be sufficient if it appeared by necessary implication.

Now, while it is true the receiver is authorized to "do and perform all the acts and things necessary to be done and

performed to construct said line of railroad," yet the means to this end, as we think, are fixed and defined in the order. "For such purpose" (the construction contemplated) the receiver is expressly authorized to issue certificates "for money borrowed, material furnished, labor performed, or on account of contracts made by him for or on account of the construction or completion of said road, or any part thereof." The receiver, being an officer of the court, has no implied powers other than those derived from the order of the court. Such being true, we think it clear he could not issue certificates which would constitute a first lien on the road, except for money borrowed, material furnished, or labor performed. When the material was furnished or labor performed he was authorized to issue the certificates in payment therefor, and not until then. And if he made a contract for the construction of the road he might issue certificates as the material was furnished or the labor performed, and on the completion of the road he could issue his certificate in final payment. But the power is not conferred to issue certificates in payment for material not furnished, or labor not performed. On the contrary, we are of opinion, it fairly appears he was prohibited from so doing. If the necessity existed for enlarged powers they should have been applied for. Cases have been cited by counsel where courts have expressly authorized their receivers to issue negotiable securities. But such are not applicable.

It is insisted, however, that the certificates are negotiable, and, as the plaintiff is an innocent holder for value, they are 2. ——: ——: not subject to the equities between the parties negotiability. thereto. No adjudicated case precisely in point has been cited by counsel.

As the certificates on their face state they were "issued under and by virtue of certain provisions of an order duly entered by the District Court of Clinton county, Iowa, on July 27, 1876," the plaintiff is chargeable with notice of all such order contains. Whether, under the order, the receiver

had the power to issue negotiable securities, or for property agreed to be delivered at a future day, were legal questions which the plaintiff was bound to determine at its peril. The receiver's authority was bounded and limited by the order. He had no general powers, except such as could be derived therefrom. It is true he had the power to issue certificates, but this was not unlimited. It was only in certain cases he could do so. And being an officer of the court, intrusted with the care of property in his charge as such officer, we think the plaintiff was bound to know whether these certificates were issued in accordance with the terms and contingencies contemplated by the order.

We conclude, therefore, that plaintiff is not such a holder as will cut off the equities existing between the original parties to these certificates.

AFFIRMED.