## UNION TRUST CO. OF NEW YORK *v.* CHICAGO & LAKE HURON R. CO.

*(Circuit Court, E. D. Michigan.* June 6, 1881.)

1. RECEIVERS' CERTIFICATES—NEGOTIABILITY.

> Receivers' certificates are not ordinarily negotiable. Where a receiver, acting under a special order of the court, issued a certificate and placed it the hands of the payee named therein for negotiation and sale, and the same subsequently came into the hands of the petitioner, who purchased it of a third party for 40 per cent. of its par value, and with notice of the order under which it was issued, *held,* that he took it subject to all equities between the receiver and the payee, and that, as it appeared that the latter had never accounted to the receiver for the certificate or its proceeds, the petitioner was not entitled to payment. The negotiation and sale of certificates is a trust personal to the receiver; he cannot delegate it to another and relieve himself from responsibility.

In Equity.

This was a petition by the holder of a receiver's certificate for payment from the proceeds of the sale of the Chicago & Lake Huron Railroad in the hands of the court. The facts of the case were, substantially, that on the twenty-fifth of June, 1877, the court made an order, by which, after reciting that William L. Bancroft, the receiver of the road, was largely indebted to various parties, and that no means existed to pay off and reduce said indebtedness, but that the same could be paid by the sale of receivers' certificates, the receiver was authorized and empowered to make, sell, and issue his receiver's certificates for the purpose aforesaid, to an amount not exceeding the sum of $51,181.19, in such sums as he should deem expedient, payable at not exceeding one year from the date thereof, and bearing interest at not exceeding 10 per cent. per annum; the same to be paid out of the surplus earnings of the western division of said railroad, after paying the operating expenses of said division, and the expenses of maintaining the same, with its equipments; said certificates to be a preferred charge and lien, etc., payable before any payments or distribution of the proceeds of sale should be made to the holders of any mortgage

bonds upon said western division, etc. Upon August 22, 1877, the receiver made his certificate for the sum of $2,500, payable to William R. Bowes, or his order, in four months from date, with interest at 10 per cent. per annum, payable out of the earnings of the western division of the said railroad applicable thereto. The certificate recited the substance of the order, and stated that it was issued by virtue thereof. The receiver handed it to the payee, Mr. Bowes, for the purpose of negotiation and sale, but gave him private instructions not to sell for less than par without previously advising him. The certificate was disposed of by Bowes. The receiver was never advised of it, and never received any money on account of it. The petitioner Silverman, a banker at Chicago, became the owner of the certificate by purchase, in due course of business, on the nineteenth of September, about a month after its issue, of C. H. Lane, for $1,000. It was, when so purchased, indorsed by William R. Bowes, the payee therein named. Lane's name was also indorsed upon it. At the time of the sale, Lane represented himself to be the owner of the certificate. Before purchasing, Silverman had satisfied himself of the genuineness of Bowes' indorsement. There was no evidence as to the amount received by Bowes for the certificate, nor, indeed, whether anything was paid him, nor as to who, if any one, became its holder after Bowes parted with it and before Lane acquired it.

*Otto Kirchner*, for the petitioner.

*H. M. Duffield, H. H. Swan,* and *H. L. Baker,* for the receivership.

BROWN, D. J. The certificate in question is not a negotiable instrument. The order under which it was issued gave the receiver no power to make negotiable paper. The certificate contains no express promise to pay, but is a mere acknowledgment by the receiver of an indebtedness to Bowes' order, payable out of a particular fund, if it be sufficient to pay in full all holders of such certificates, or, if it be not sufficient, then only a *pro rata* share with other holders. It recites an order limiting the amount of such paper to be issued, and is

uncertain both as to the payor and the fact of payment. The mere fact that it is made payable to the order of the payee is immaterial, unless the paper is negotiable in its nature. *Railroad Co.* v. *Howard,* 7 Wall. 415; *Newbold* v. *P. & S. R. Co.* 5 Bradw. 367, 375.

It is said by the court in *Baird* v. *Underwood,* 74 Ill. 176,—

" It enters into the definition of a promissory note that the money must be payable at all events, not depending upon any contingency either in regard to the event, or the fund out of which payment is to be made, or to the parties by or to whom payment is to be made." See, also, *Dawkes* v. *Lorane,* 3 Wil. 267.

These characteristics are conspicuously absent in the certificate in question. Indeed, it lacks the most essential elements of commercial paper, and we believe the courts of this country have, without exception, held certificates of this nature to be non-negotiable. *Stanton* v. *A. & C. R. Co.* 2 Woods, 506; *Turner* v. *P. & S. R. Co.* 95 Ill. 134; *Bank of Montreal* v. *C. & C. R. Co.* 48 Iowa, 518; *Newbold* v. *P. & S. R. Co.* 5 Bradw. 367. It results, then, that although the petitioner appears to be a holder for a valuable consideration of the certificate in question, without notice of any facts except such as appear in the order, he took it subject to all the equities between the original parties. The paper was made payable to Bowes, or his order, and was delivered to him by the receiver for negotiation and sale; but it appears that Bowes was unfaithful to his trust, and never accounted to the receiver either for the certificate or for the money realized by its sale. It is insisted, however, that the receiver made Bowes his agent to sell the certificate; that Bowes indorsed it, and, therefore, presumptively received the money upon it; and that such payment to him was in law a payment to the receiver in his official capacity, and a credit to the fund; and that, as it does not appear to whom Bowes transferred it, the presumption is, from his indorsement, that he received full value for it. It is material in this connection to inquire whether the receiver had power to delegate his authority to Bowes to sell the certificate and receive the money upon it. If he was vested by the order of June 25th, simply with a personal trust, he had no power to ap-

point an agent; and if he assumed to make such appointment without authority, he would be personally responsible for the conduct of his subordinate. If, however, the trust was one which could be delegated, he would be liable in his official capacity only. The substance of the law upon this subject is thus stated in Story on Agency, § 14:

"The true doctrine which is to be deduced from the decisions is, and it is entirely co-incident with the dictates of natural justice, that the authority of an agent is exclusively personal, unless from the express language used, or from the fair presumptions growing out of the transaction, or of the usages of the trade, broader power was intended to be conferred on the agent." See, also, *Commercial Bank* v. *Norton*, 1 Hill, 505.

That the receiver of a railroad must act very largely through servants and agents in the ordinary business of the road is evident. He is in fact the superintendent and manager of the road, and the head of an army of employes whose duties are distinctly defined by usage and the necessities of the case. There can be no doubt of the power of the receiver to appoint these agents, and if his appointments are made in the exercise of a reasonable judgment and discretion, he would not be liable personally for their negligences or misfeasances. But his authority to raise money upon certificates stands upon a different footing. His general authority as receiver gave Mr. Bancroft no power to issue these certificates. It could only be done under the power conferred by a special order of the court. It was his duty to prepare a form of certificate in conformity with this order, and to sell the securities upon the most favorable terms he could obtain. The preparation of the certificates involved very little in the way of skill or judgment. Their negotiation and sale, and the receipt of the moneys, were the important features of the transaction. It was a personal trust which he had no right to delegate to another. It involved, not merely the sale of the certificates upon the best possible terms, but the safe-keeping of the moneys realized by such sale. If he had the power to authorize an agent to sell and receive the money upon this certificate, the receipt of the money by the agent would be a receipt by the receiver; and if the agent absconded with it, the receiver would incur no

personal liability if he used due care in the selection of his agent. If he had the power to authorize Mr. Bowes to sell the certificate for $2,500, I see no reason why he had not the same power to put the whole issue of $50,000 in his hands, and entrust him with the negotiation and sale. Suppose this had been done, and he had embezzled the money, would it be claimed that the receiver would not be liable? It is incredible that a court would permit an agent to be appointed for the negotiation of these certificates, and relieve the receiver to that extent, without at least requiring from such agent a bond for the faithful performance of his duties. This was apparently the view taken by the supreme court of Illinois in *Turner* v. *P. & S. R. Co.* 95 Ill. 304, though the question is not discussed in the opinion of the court. It seems to me, then, that Bowes must be considered what he purports to be, viz., the payee of the certificate, and that the party buying of him dealt with him as the owner, and that the certificate in the hands of the petitioner is open to any defence which might exist if it were still in the hands of Bowes. I am not prepared to say, even if the receiver had authority to make Bowes his agent to negotiate this certificate, that the mere indorsement of Bowes creates a presumption that he received its par value; and it is conceded that the receiver had no right to negotiate it for less than par. Indeed, I am inclined to think that the mere fact that the petitioner was able to purchase it at so large a discount so soon after it was issued, and with knowledge of the order under which it was issued, was itself sufficient to put him under inquiry. Bowes is dead, and his affidavit made before death cannot be received in evidence. Lane is the most material witness in this case, and it is exceedingly unfortunate that we have not the benefit of his testimony. No reason is given why it has not been produced.

Upon the whole, it seems to me quite clear that the petitioner does not stand in a position to charge the receiver fund with the payment of the certificate, and his petition must therefore be dismissed.