STANTON and others *v.* ALABAMA & C. R. Co.

*(Circuit Court, S. D. Alabama.* July 6, 1887.)

1. EQUITY PRACTICE—MASTER'S REPORT.
   The finding and report of a master will not be interfered with, except when it is clearly and satisfactorily shown that the same is not in accordance with the law and the evidence.

2. RECEIVERS—ISSUE OF CERTIFICATES—VALIDITY.
   Where receivers appointed by the court issue certificates, and use and dispose of the same in a manner not in accordance with the order of the court authorizing their issue, the same are invalid, and of no effect.

3. SAME—NEGOTIATION OF CERTIFICATES.
   Such certificates not having the quality of negotiable instruments by the law-merchant, being invalid in their inception, are invalid in the hands of all subsequent takers, whether *bona fide* holders for value or not.

4. SAME—CONTRACT TO PAY CERTIFICATES—LIABILITY.
   And a contract to pay such invalid certificates, made by a purchaser of the property who subsequently became receiver, not being required by an order of the court, cannot be enforced against the receiver in his official capacity, nor the property be made liable thereon.

5. SAME—PRACTICE.
   Such a contract being merely a voluntary and personal undertaking, cannot be considered by the court on exceptions to a master's finding and report on the *status* of such certificates.

6. SAME—ESTOPPEL.
   And the receiver, as representative of the property by authority of the court, is not estopped from contesting the claim under such contract.

In Matter of Exceptions to Master's Report, disallowing claims against purchaser of railroad property under mortgage sale.

D. N. Stanton and others, as trustees under the first mortgage of the Alabama & Chattanooga Railroad Company, filed a bill for the foreclosure of that mortgage, and August 26, 1872, Mr. Circuit Justice BRADLEY appointed Rice and Haralson receivers of the railroad property, with authority to issue $1,200,000 of certificates, at not less than 90 cents on the dollar, to raise funds for the repair of the road. A decree of sale was rendered January 23, 1874, but on August 24 of the same year it was found expedient to order the property to be turned over to the trustees, complainants, with authority to use the certificates remaining unissued. At different times masters have investigated the use made of the certificates, but, up to the report now excepted to, the 14 held by Church and McVity have never been disallowed. Master Burke reports, July 5, 1886, disallowing this claim, stating that the facts of the origi-

nal issue, unknown up to the time of the reference held by him in that year, prove their improper issue.

The 14 certificates in controversy were a part of 40, known as the "Speilman certificates," issued to D. N. Stanton by the receivers not long after the decree authorizing the issue of certificates. The consideration was his claim for services, as trustee of the bondholders and otherwise, before the foreclosure suit was begun. Petitioners acquired the certificates at par from D. N. Stanton, in 1875, by way of payment for land in New York purchased by D. N. Stanton, with full knowledge of the terms of the decree authorizing them, but under Stanton's assurance that the certificates had been properly issued.

The railroad property was sold at master's sale, January 22, 1877, to J. C. Stanton, brother of D. N. Stanton, subject to all liens; and J. C. Stanton shortly afterwards transferred his bid to John Swann, representing a syndicate which organized the Alabama Great Southern Railroad Company. The road is now an important link in the Cincinnati, New Orleans & Texas Pacific Railroad system. This transfer of bid was permitted by the court, but the agreements under which Stanton made the transfer were not made known to the court. These agreements contemplated the settlement by the purchaser of these 14 certificates among other claims. This has never been done, and one principal ground of exception is that the master reported adversely to the court's compelling a performance of this contract.

    *P. & T. A. Hamilton*, for petitioners, Church and McVity.

    *Sam. F. Rice*, for purchaser, Swann.

TOULMIN, J.[1] The real issue presented by the exceptions—indeed the only practical issue—is the validity and effect of 14 receivers' certificates, for $1,000 each, held by the claimants, Church and McVity; and sought by them to be established as a valid claim and lien against the trust property, the Alabama Great Southern Railroad, formerly the Alabama & Chattanooga Railroad, involved in this litigation. Special Master Burke reported adversely to the claim; that the certificates were not used or disposed of in accordance with the order of court authorizing their issue; and that they should not be allowed by the court. He submits with the report the testimony taken before him on the reference, and on which his report is based.

There are many exceptions to this report, but the substance of them is that the special master erred in his findings, and should have reported in favor of the allowance of the 14 certificates held by Church and McVity. By a decree of this court of February 14, 1876, it was declared that there were certain facts necessary to be known by the court before a satisfactory decree could be rendered on these certificates, and, in the absence of such knowledge, the court at that time declined to allow the claim based on the certificates, but referred the matter to a special master, Judge Lyman Gibbons, to ascertain and report the facts desired to be

---

[1] District judge, sitting as circuit judge.

known, and declared by the court necessary to be known in order to render a satisfactory decree. These facts were not ascertained until July 5, 1886. At the reference had under the decree of 1876 no evidence whatever was submitted to Master Gibbons by the holders of said certificates. They wholly omitted to make good their claim, or to offer any evidence in support of it, and he so reported. Thus the matter stood until May, 1886, when Master Burke held the reference on which his report of July 5, 1886, was made.

If the court, in 1876, had not a knowledge of the facts necessary for it to render a satisfactory decree, then the court has not such knowledge yet, unless it is acquired from Master Burke's report referred to, and from the testimony accompanying it. He finds from the testimony and reports that the certificates have no validity and effect as a claim and lien against this railroad property. The exceptions raise the question whether this finding and report are correct, under the law and evidence submitted, and the court is asked to set aside the report, and allow the claim as valid, to decree its payment, and to establish it as a lien against the property.

It is well settled that, unless it is clearly and satisfactorily shown that there is error in the finding of the master, the court should not interfere. It is not only *not* clearly and satisfactorily shown that there is error in the finding of the special master in this instance, but I am of opinion that his finding and report in regard to these certificates is in accordance with the law and the evidence submitted to him, and is in all respects correct. The evidence shows that these certificates were disposed of in a manner and for a purpose not authorized by the order under which they were issued. They were, therefore, invalid and of no effect.

But it is contended by the claimants that they are *bona fide* holders for value of such certificates. The certificates are not commercial paper, good in the hands of *bona fide* holders, no matter what vice or infirmity might attend their original issue. They are good for the amount of money actually paid for or loaned on them to the receivers, in accordance with the terms of the order of the court. But they have not the quality of negotiable instruments by the law-merchant. *Stanton* v. *Alabama & C. R. R.*, 2 Woods, 506.

The proof shows no money was paid for these certificates, or loaned or advanced to the receivers on them. They were issued and given to D. N. Stanton for an entirely different purpose, either to pay him on account of salary alleged to have been due him long before, or to reimburse him on account of money claimed to have been advanced by him for expenses of the road when he was trustee for the bondholders. Neither purpose, however, was in contemplation of the order authorizing the issue and use of the certificates. Special Master Burke characterizes the transaction by which Stanton obtained these certificates as fraudulent, and the circumstances connected with it, and with the claim based on it, as fraudulent and audacious. He (Stanton, the first taker,) derived no title from the transaction, and the subsequent holders, these

claimants, occupy no better position, whether they are *bona fide* holders
or not, which question it is not necessary to decide here.   *Stanton* v.
*Alabama & C. R. Co.*, 2 Woods, 506.

But it is further contended that John Swann, the purchaser of the
said railroad, and the present receiver or trustee for the property, long
since the issue of said certificates by previous receivers, contracted to
pay said Stanton these identical certificates, and that he should be made
to comply with his contract, and to pay these claimants for them.    I
think there are two answers to this proposition :  (1) That such contract
was a voluntary and personal undertaking of said Swann, not required
by the order of this court, and with which the court has nothing to do
in this case.    It was a contract, too, to which these claimants were not
parties.    (2) That the proof shows that Swann has settled with Stanton
for the certificates, and thereby complied with his private arrangement
with him.    If these claimants have been in any way damaged thereby,
and have any legal rights in the premises, they have their recourse in
a personal action against said Swann.    That is a matter of which this
court can take no cognizance in this proceeding, nor can the railroad
property be liable for any such claim as is set up.

It is further contended that Swann is estopped from contesting this
claim by the contract referred to.    I do not think that any question
of estoppel arises in this case, for reasons already stated herein, and
Swann's connection with the contest of this claim is as the representa-
tive of the railroad company, and as receiver of its property by authority
of this court.    As to the doctrine of estoppel, see *Brant* v. *Virginia, C. &
I. Co.*, 93 U. S. 326 ; *Deery* v. *Cray*, 5 Wall. 795 ; Pom. Eq. Jur. § 804,
and note.