[No. 4262.]

THE PUEBLO TRACTION AND ELECTRIC COMPANY ET AL.
v. ALLISON, TRUSTEE, ET AL.

**1.  Corporations—Receivers—Building  Railroads—Mortgages.**

Where the property and franchises of a railroad company are placed in the hands of a receiver pending the foreclosure of a mortgage, the court will not authorize the receiver to issue certificates and give them a preferred lien over the mortgage on the property of the company, for the purpose of building an extension or addition of the railroad, except in case of an overwhelming and irresistible necessity, and for the purpose of preserving the property and franchises of the corporation.

22

2. Receivers—Building Street Railways—Forfeiture of Franchise—Pleading—Mortgages.

A receiver in possession of and operating a street railway pending foreclosure of a mortgage petitioned the court for authority to build one mile of railway and to borrow money for that purpose and that certificates issued therefor be given a preference lien on the property of the company. The petition alleged an ordinance of the city granting the company its franchise, wherein the company was required to build and operate at least one mile of railroad each year until the entire road as contemplated should be completed, and providing that a failure to build such mile of railroad should forfeit to the city all franchises and rights of way over the streets not occupied, after and upon written notice to the company of such failure. There was no allegation that the city would enforce the forfeiture, or that a foreclosure sale could not be had in time for the purchaser to build the one mile of railway within the year. Held that the petition did not show such necessity for the construction of the road as would justify the granting of the application over the objections of the mortgagees.

## Appeal from the District Court of Boulder County.

The Boulder Railway and Utility Company is a corporation organized under the general laws of this state for the purpose of maintaining and operating a street railway in the city of Boulder. Becoming indebted it executed, in 1899, twenty-eight negotiable promissory notes in the aggregate amount of about fourteen thousand dollars, and to secure their payment gave to W. H. Allison, as trustee, a mortgage or deed of trust on all of its property and franchises. Having defaulted in the payment of the notes, the trustee, upon the request of certain of the note-holders, as provided by the trust deed, on April 7, 1900, in the district court of Boulder county brought suit to foreclose the mortgage, and thereafter, in that suit, and on the 12th of that month, secured the appointment of a receiver to operate the railway pending the foreclosure.

On the 5th of May following the receiver filed a

petition in the court asking for an order authorizing him to build a mile of railway and to that end that he might borrow money and issue receiver's certificates therefor to be a charge on the property embraced in the mortgage superior to the lien of that instrument. The trustee apparently was about to give his consent thereto, and upon receiving such information a majority in interest of the beneficiaries applied for, and obtained, an order of the court making them parties to the suit; whereupon they filed a protest against the granting of the petition, particularly as to that part in which it was proposed to make the receiver's receipts a lien superior to theirs.

The hearing was before the court upon the petition of the receiver, the protest of the note-holders, and the admission of the parties affected that the attorney who brought the foreclosure suit then represented the protesting beneficiaries, and at their request the trustee instituted the action. The court granted the order extending the line, authorized the issuance of receiver's certificates, and made them a first lien upon the *corpus* of the property. The protesting note-holders bring the case here by appeal.

Mr. HENRY F. MAY, for appellants.

No appearance for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Appellees have not appeared in this court. Appellants do not traverse any allegation of fact set up in the petition of the receiver, but question the power of the court to enter the order. It appears in this petition that in the ordinance of the city of Boulder granting to the railway company the rights and franchises to construct and operate a street railway in the city of Boulder, there was a requirement that the

defendant "during each and every calendar year, beginning with the year 1900, shall build and operate at least one additional mile of road until the total mileage of said road shall be at least eight miles, and so much of the right of way herein granted as is not occupied by said grantees at the time and in the manner herein provided shall be forfeited to the city of Boulder, provided, however, that failure on the part of the grantees herein to construct the additional mile in each succeeding year shall forfeit to said grantors, namely, the city of Boulder, all further rights and privileges of occupation of said city streets granted under this section to the grantees herein, after and upon the written notice to said grantees of such failure." It appeared also in the petition, as well as in the complaint in the main action, that the most valuable asset of the railway company was the franchise granted it by the city of Boulder to operate its street railway in the streets and avenues of the city, and that to preserve the rights and franchises it was necessary that the property be kept together and operated as an entirety.

Appellants do not question the power of the court, through its receiver, to operate a street railway and, if the income from the business is inadequate for that purpose, to make the ordinary expenses of operation a lien upon the *corpus* of the property superior to that of prior mortgagees. But they contend that it is beyond its jurisdiction to build extensions of a railroad which comes under its management in proceedings brought by mortgagees to foreclose their liens on the mortgaged property.

In *Kennedy v. St. Paul & Pac. R. R. Co.,* 2 Dillon, 448, the United States circuit court, in order to prevent a valuable land grant in favor of a railroad from lapsing, authorized its receiver, who was appointed at the instance of bondholders of the com-

pany whose principal security consisted of this grant, to complete the unfinished portion of the road, and the order was passed because it was considered that the only practicable way to preserve the most valuable asset and franchise of the company was to complete the line.   Judge Dillon, who made the order, as it appears during the progress of the case in his opinion reported in 5 Dillon, 519, recognized that the proceeding was unusual, and justified it solely upon the ground that there was an overwhelming and irresistible necessity therefor.   It also appeared that four-fifths of all the bondholders applied for the order, and not a single one appeared to oppose it, and that the trustee in the mortgage, who represented all the bondholders, asked that it should be made.

In *Jerome v. McCarter,* 94 U. S. 734, 738, under peculiar circumstances an order authorizing the finishing of a ship canal in order to preserve, both for the lien creditors and the mortgagors, valuable lands was upheld, because otherwise the lands would have reverted to the United States government.   The court observed in this connection that whether the action of the trial court which made the order could make the receiver's mortgage, given to secure advances made to finish the canal, superior in right to the mortgages which existed when it was made, it was needless to inquire, because that question was not before the court.

In *Kent v. Lake Superior Canal Co.,* 144 U. S. 75, 89, the doctrine of the *McCarter Case* was approved.   In *Bank of Montreal v. C. C. & W. R. Co.,* 48 Ia. 518, such an order directed to the receiver to construct and complete a line of railroad under his charge, and which made the receiver's certificates which he was directed to issue therefor a lien superior to that of the mortgage, was also upheld.   The court remarked that the order was assumed to be

necessary and proper for the preservation and protection of the property committed to the charge of the receiver. It does not appear from the opinion what were the facts upon which the order was based.

In Moran et al. v. Lydecker, 27 Hun, 582, a similar order was sustained upon the ground that it was necessary to complete the road within a certain time fixed by statute in order to save its franchises. In Fidelity Ins. &c. Co. v. Roanoke Iron Co., 68 Fed. 623, it was said that a court of equity has no power to make an order of this kind unless it is necessary to preserve the existence of the corporate property and its franchises. In Shaw v. Railroad Co., 100 U. S. 605, instead of accomplishinig the end desired, viz, the building of an additional line of road through the instrumentality of a receiver and receiver's certificates, another method which the court deemed preferable was adopted, viz, an agreement between the parties concerned, by which the enterprise was reorganized on the basis of existing mortgages as stock, and by a new mortgage with liens superior to the old, whereby the money was obtained without asking the court to engage in the building of railroads. That was apparently a case where all parties concerned agreed, and so is not strictly applicable to the question now before us.

In Miltenberger v. Logansport Ry. Co., 106 U. S. 286, 308, the validity of an order is recognized which, among other things, authorized the receiver to construct six additional miles of road and to give a preferential lien therefor upon the ground that the petitions upon which the orders were based furnished ample reasons for making it. In chapter 13 of Beach on Receivers and in High on Receivers (3d ed.) chapter 11, 4th subdivision, are to be found other citations.

The foregoing cases are cited as the ones which

confessedly have extended the extraordinary powers of a court of equity to an extreme limit. In our brief summary of the facts of the respective cases, and from other facts that appear in the statements which we do not deem it necessary to reproduce here, it is clear that the reasons for the extension of the jurisdiction were far more imperative than those disclosed in the case at bar. While the power of a court of equity in a proper case "to engage in railroad building" has been upheld, it is an unusual one which should be exercised with great caution and only in the face of an "overwhelming and irresistible necessity," and for the purpose of preserving the corporate property and franchises. Let us, therefore, by this test determine whether a sufficient showing was made to authorize the order in this case.

First, we observe that a court should rarely, if ever, exercise this extraordinary jurisdiction even if the consent of all the parties be obtained. We think the better practice is, as declared in *Hand v. Railroad Co.*, 10 Richardson (S. Car.) 406, to refer the application to a master or referee, and only upon his report showing the necessity therefor, or after a hearing of all the facts by the court itself, attended with like result, should the order go. That was not done in this case. No evidence at all was taken. The only ground upon which the present order can be justified is that it was necessary to save a forfeiture of the franchise of the railway company, but the petition fails to disclose an overwhelming and irresistible necessity therefor. It is true that it contains an allegation that by the ordinance of the city the railway company was required to build during each calendar year an additional mile of road until the aggregate mileage was eight, and that the right of way which had been granted for such additional mileage might be forfeited

to the city of Boulder in case the extension was not made. But it nowhere appears that the city intended, or threatened, to give written notice of the failure of the defendant to construct the additional mileage, or that in case of such failure that the city would enforce a forfeiture of any of its rights or privileges. Neither is there any showing that the foreclosure might not have been made and a sale had in ample time for the purchasers to make compliance with this ordinance within the time limited by the ordinance. The portions of the ordinance quoted in the petition are so meager that it would be unfair to the grantor of the franchise and its grantee for the court in what is not much more than an *ex parte* proceeding, to pass upon their relative rights and liabilities, which could be better done from an examination of the ordinance taken as a whole; but if all interested parties were present it would be better practice to withhold decision until all the facts bearing on the rights of all parties are presented to the court.

While it is the duty of the court in such cases to protect the rights of both mortgagor and mortgagee, we are of opinion that no sufficient showing for the order in question was made; and if it be conceded that in a proper case, and on a proper showing, it becomes the duty of a court of equity to engage in the business of building railroads, the necessity therefor in the present case has not been made to appear. *International Trust Co. v. United Coal Co.,* 27 Colo. 246, is not a case exactly in point, but some observations in the opinion throw light upon the attitude of this court in its disinclination to extend the unusual power which was asserted in the court below

Such power, even if it exists, should rarely, if ever, be exercised when in so doing the lien of a

mortgage is displaced against the protest of bond-holders secured by that mortgage.

The judgment is therefore reversed and the cause remanded for further proceedings, if any, in accordance with the views herein expressed.

*Reversed.*