## ARCHIBALD TURNER *et al.*

### *v.*

## THE PEORIA AND SPRINGFIELD RAILROAD COMPANY.

*Filed at Ottawa May 18, 1880.*

1. RECEIVER'S CERTIFICATES—*not enforcible if without consideration.* A certificate of indebtedness issued by a receiver of a railroad company, under an order of the court appointing him, to pay debts and expenses incurred by his predecessor, not on account of any indebtedness made by the former receiver or for which the receiver issuing it received any benefit from the payee, or any one else, is not entitled to be paid out of any funds in the hands of the receiver, either at the suit of the payee or holder for value.

2. SAME—*notice of right to issue, by writing on back.* Where a court orders a receiver of a railway company to issue certificates of indebtedness for a specific purpose, to be made payable to the persons to whom delivered or order, and one is issued to A B or bearer, which is negotiated by mere delivery,

the holder will take the same subject to all equitable defences against the payee, and the printed order of the court on its back is notice to him that it was made payable to bearer contrary to the order of the court authorizing the issue.

3. ASSIGNMENT—*what instruments are negotiable.* All instruments for the payment of money or articles of personal property to a particular person, are only assignable, under our statute, so as to enable the assignee to maintain an action in his own name, by the indorsement of the person named as the payee under his hand;—and it makes no difference that such instruments contain, in addition to the name of the payee, the words "or order," "or bearer." The recent statute, making instruments payable to bearer only, negotiable, has not changed this rule.

4. SAME—*what kind of paper is negotiable.* It is essential to the negotiability of promissory notes, bonds, bills and other instruments in writing for the payment of money or articles of personal property by indorsement, that they be payable absolutely and unconditionally,—not depending on any contingency, either in regard to the event or the fund out of which payment is to be made, or as to the parties by whom or to whom payment is to be made.

5. SAME—*receiver's certificates are not negotiable.* Certificates of indebtedness issued by a receiver, under an order of a court, are wanting in nearly every essential quality of negotiable commercial paper, as they are not payable unconditionally out of any fund. Whether they are payable in full, or only *pro rata*, depends on the fact of the sufficiency of the fund under the control of the court. Again, there is no personal liability on any one for their payment. Only the fund which the court controls is bound, and that only when it is equitable to charge it with the payment of the money evidenced thereby. Their payment can only be coerced by application to the court having control of the trust property for an order upon its acting officer.

6. SAME—*when it cuts off defence.* An instrument not assignable or negotiable, as those words are used in the law, is subject to the same defences in the hands of the holder as could be made against the original payee, notwithstanding he may in good faith have paid full value therefor.

7. RECEIVER—*protection against waste by him.* While courts are zealous to protect the rights of parties who may have furnished money for the preservation of trust property, equal care and vigilance will be observed to see that the property is not wasted by the improvident acts of receivers.

APPEAL from the Appellate Court for the Second District.

Mr. S. D. PUTERBAUGH, for the appellants:

Even if the question was presented of the right of the court to order the issue of the receiver's certificates, the parties

are estopped to deny their validity. It appears, from the order of the court directing their issue, that the bondholders, the trustee named in the deed of trust, and all other parties to the suit appeared in court and consented to the order. If, being before the court, they made no objection to the creating of such debt and liens upon the property by the receiver, they can not afterwards object to according priority to the liens so created. Jones' Railroad Securities, secs. 540–543; *Kennedy* v. *St. Paul and Pacific R. R. Co.* 2 Dill. 448; *Vermont and Canada R. R. Co.* v. *Vermont Central R. R. Co.* 50 Vt. 500; *Hoover* v. *Montclair and G. L. Ry. Co.* 29 N. J. Eq. 4; *Meyer* v. *Johnston,* 53 Ala. 237.

If the agent of the receiver failed to pay over the proceeds of the certificates it was no fault of the appellants. They were not bound to see to the application of the money received by him. If the agent embezzled the funds the loss must fall on the receiver who appointed him. *Stanton* v. *Alabama and Chattanooga R. R. Co.* 2 Wood C. C. R. 506.

The rule is universal that where one of two innocent parties is to suffer, the loss must fall upon the one first in fault. *Garvin* v. *Wiswell,* 83 Ill. 216; *Gavagan* v. *Bryant,* 83 id. 376; *Stone* v. *Milliken,* 85 id. 221; *Horn* v. *Nichols,* 1 Salk. 289.

A receiver is responsible for any loss which is occasioned to the estate from his wilful default; therefore if he places money received by him in what he knows to be improper hands, the court will compel him to pay it out of his own pocket. 2 Dan. Ch. Pl. and Pr. 1, 439; Kerr on Receivers, 209, 210; High on Receivers, secs. 269, 286; *Knight* v. *Lord Plymouth,* 3 Atk. 480; *Stanton* v. *Alabama and Chattanooga R. R. Co.* 2 Woods C. C. 506; *Kline* v. *Jewett,* 26 N. J. Eq. 474.

It is recited in the certificate that it was issued in accordance with the order of the court on account of indebtedness due Smith, who negotiated the same from the former receiver. *Schenck* v. *Supervisors, etc.* 1 Biss. 533; id. 292; *Bolton* v. *Board of Education, etc.* 1 Bradw. 193.

A receiver's certificate is negotiable, and when payable to bearer is transferable by delivery, and possesses all the ordinary attributes of negotiable instruments. The purchaser of such a certificate, like the purchaser of a municipal bond, is put upon inquiry as to two points: 1, as to whether there has ever been authority of law by which the certificate has been issued, and 2, as to whether the certificate has been issued by the proper officials and within the scope of their authority. Having ascertained these two points he is bound to go no farther, if the face of the certificate shows that it is valid. 2 Coler on Mun. Bonds, 134; *Bissell* v. *Jeffersonville, etc.* 24 How. 287 ; *Comrs. of Knox County* v. *Aspinwall,* 24 id. 540; *Rogers* v. *Burlington,* 3 Wall. 654.

Mr. B. S. PRETTYMAN, and Messrs. HUGHES & BLOOMFIELD, for the Peoria and Springfield Railroad Company :

Equitable securities are taken subject to equities. The case, the court and the authority to issue are printed on the certificates. This alone is sufficient to put a prudent dealer on inquiry. *Stanton et al.* v. *Alabama and Chattanooga R. R. Co.* 2 Woods, 513.

The certificate is not in the form required by the court. The decree is mandatory, and not following the decree is not complying with the law and renders such instruments void. *Glidden* v. *Hopkins,* 47 Ill. 528.

The receiver can not delegate his trust so as to bind or destroy the fund in court, and if Smith had been an agent to dispose of the certificate, and appellants knew that fact when they accepted the security to secure the private debt of the agent, they became parties to the fraud.

A receiver's certificates have not the quality of negotiable instruments by the law merchant. *Stanton* v. *Alabama and Chattanooga R. R. Co.* 2 Woods, 515 ; *Bank of Montreal* v. *Chicago, Clinton and W. R. R. Co.* 48 Iowa, 518; Jones on Railroad Securities, secs. 545, 546.

All instruments in writing in this State that are made assignable by the statute are not negotiable, in the sense of cutting off equities when in the hands of innocent holders. *Nevill* v. *School Directors,* 68 Ill. 516.

In a suit in equity to foreclose a mortgage, even negotiable instruments indorsed before they are due are taken subject to all equitable defences against them.    *Olds* v. *Cummings,* 31 Ill. 188; *Haskell* v. *Brown,* 65 id. 29; *Thompson* v. *Shoemaker,* 68 id. 256; *Bryant* v. *Vix,* 83 id. 11.

Mr. L. W. JAMES, and Messrs. HOPKINS & MORROW, for the bondholders and appellee:

Negotiable instruments must have as payor a certain, definite person or corporation capable of giving credit, and of being sued in an action at law.    *Nichols, Admr.* v. *Davis,* 1 Bibb, 490.

Since the receiver is an officer of court, and all contracts made by him are subject to ratification by the court, it has the undoubted power to vacate or modify any agreement or contract which the receiver has made.    High on Rec. sec. 180; *Mooney* v. *B. C. L. Ins. Co.* 9 Abb. Pr. (N. S.) 103.

The receiver's certificates are not negotiable instruments, because they are payable only out of a particular fund. *Dawkes* v. *Deloram,* 3 Wils. 207; Story on Prom. Notes, sec. 22-25; Parsons on Bills, sec. 43; 1 Daniell on Neg. Inst. secs. 149-155; *Janny* v. *Herle,* 2 Lord Raym. 1364; *Harriman* v. *Sanborn,* 43 N. H. 129; *Averitt* v. *Booker,* 15 Gratt. 163; *Corbett* v. *State,* 24 Ga. 287; *West* v. *Foreman,* 21 Ala. 400; *Mills* v. *Kuykendall,* 2 Blackf. 48; *McGee* v. *Larramoor,* 50 Mo. 425; *Husband* v. *Epling,* 81 Ill. 172; *Baird* v. *Underwood,* 74 id. 176; *Kelly* v. *Hemingway,* 13 id. 604; *Smally* v. *Edy,* 15 id. 324.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Many of the principal facts contained in this record appear by stipulation of the parties.    On May 22, 1875, under a bill

filed by a bondholder, the Peoria and Springfield Railroad Company was placed in the hands of a receiver, who, under the direction of the court, took possession of all the property of the company.

Application was made to the court, by the first receiver appointed, for leave to borrow money with which to make needed improvements indispensable to the preservation of the property and to the profitable running of the road, which was granted, and the receiver authorized to borrow a sum of money, not exceeding $20,000, for the purposes named in the order of the court, to be paid out of the earnings and proceeds of the property after first paying the operatives and employees of the road.

Afterwards, on the 22d day of June, 1875, by another order of the court, the receiver was authorized to borrow $34,646, including the $20,000 specified in the previous order, to be by him expended for the purposes, and no other, expressed in the order of June 14, 1875, and in his concurrent application, for a period of not less than one nor more than five years, with interest not exceeding ten per cent per annum, and for which he was authorized to issue to the person or persons from whom he should borrow the money his certificate as such receiver, the form of which was prescribed by the court, and that it should express on its face to whom it was issued, on what account, and that it was issued by order of the court,—a copy of which order was required to be printed on the back of the certificate.

The money to be borrowed by the receiver under this order was to be a first lien on the income, revenues and earnings of the railroad company after deducting therefrom the operating expenses, and on all other property of the company, real and personal. It was made the duty of the receiver from time to time to report his acts and doings to the court, and so soon as he should borrow any money to report to the court the person or persons from whom it was obtained, the time of payment, and the rate of interest to be paid.

On the resignation of the first receiver another one was appointed by the court, who was required to give bond in the sum of $50,000, conditioned for the faithful performance of his duties as such receiver.

It was made to appear that the indebtedness incurred by the first receiver remaining unpaid amounted to about $100,000, and that the receiver just appointed was unable to meet such indebtedness from the current earnings of the road, and thereupon it was ordered by the court that the receiver issue certificates of indebtedness for any outstanding valid indebtedness of the late receiver, or to borrow a sufficient sum of money with which to pay such indebtedness, on such time as he should deem proper, not exceeding two years, and at a rate of interest not exceeding ten per cent per annum, payable semi-annually.

The amount of such certificates was limited to the present indebtedness of the late receiver, and was not to exceed $100,000, and to be used for the purpose of liquidating such indebtedness, and for no other purposes. The form of the certificate the receiver was authorized to issue was prescribed. It was to be made payable to the party to whom it was to be delivered, or his order, and a copy of the order of the court authorizing the issuing of such certificates was required to be printed on the back thereof.

On the 7th of October, 1878, Archibald Turner and Joseph S. Decker filed their intervening petition in the original cause wherein the receiver had been appointed, in which they represented to the court that they were the *bona fide* holders of a certificate of indebtedness issued by the second receiver of the effects of the railroad company, dated November 20, 1877, payable on or before the 20th day of August, 1878, for the sum of $5,000, payable to B. E. Smith or bearer, and that such certificate was issued on account of indebtedness incurred by the former receiver under the order of the court rendered in the principal cause. Petitioners state the manner in which they became the holders of such certificate, from which

it appears that Benjamin E. Smith, the payee named in the receiver's certificate, was indebted to them in the sum of $6500, for which they held his protested checks. At this time petitioners were pressing Smith for payment, when he represented to them that his draft on the manufacturing firm of H. R. Smith & Co. would be good. Thereupon it was agreed that petitioners would accept Smith's draft on H. R. Smith & Co. at sight for $4900 and advance him $3400 in cash, which they did, and give him credit with $1500 balance when paid on his indebtedness to them, which draft for $4900 was to be and was secured by the transfer to them of the receiver's certificate mentioned, as collateral. The draft Smith gave petitioners on the firm of H. R. Smith & Co. was protested and was never paid. Some further changes in the securities were made, but the indebtedness for which the certificate of the receiver was pledged as collateral security was never paid, and by reason of such default petitioners demand payment of the certificate held by them, and, having filed their petition for that purpose, ask an order upon the receiver of the railroad company to pay them the amount thereof out of funds in his hands properly applicable thereto.

An answer by the acting receiver was filed denying the allegations of the petition. The cause was then referred by the court to the master in chancery to take proofs and report his findings thereon. The master reported on the facts proven, about which there does not seem to be any considerable disagreement, his conclusions, as follows:

" 1st. That the receivership has received no benefit whatever from said certificate, and that no part of it went to the payment of the indebtedness of the former receiver of this court.

" 2d. That the receiver had no power or authority to dispose of certificates save in the manner and for the purposes expressed in the order of the court set out on the back of the certificates; that neither Mr. Smith nor the petitioners were creditors of the former receiver, and that neither of them

paid the receiver any money or other property that could be by him used in the payment of debts of the former receiver. Nor did the said certificate go to the reduction of such indebtedness in any way or manner. Hence the object of the order was in nowise carried out.

"3d.   I find that the authority of Mr. Hilliard to borrow and receive money and issue certificates therefor, could not be delegated to another, so as to bind the fund in court.

"4th.   I find that these certificates of indebtedness are not negotiable instruments in the sense which will cut off equities or defences as against innocent holders for value, but that the same, even in the hands of *bona fide* purchasers without notice, are subject to the same equitable defences which would exist between the original parties thereto.

"5th.   This certificate in form was a certificate of indebtedness payable to B. E. Smith, and petitioner dealt with him as the owner thereof.   Certainly Mr. Smith could not enforce its payment,—having paid nothing therefor, he had no title and could grant none."

As the exceptions taken to the master's report relate more to his conclusions drawn from the evidence than to matters of disputed fact, it will not be necessary to note them to an understanding of the case.   The circuit court disallowed the claim, and on the appeal of petitioners to the Appellate Court for the Second District, that decree was affirmed.   The case comes now to this court on the appeal of petitioners.

Under the facts there can be no pretence, had the claim been presented by the payee named in the certificate, that he would have been entitled to have it paid out of any funds in the hands of the receiver.   It was not issued to him on account of any indebtedness incurred by the former receiver, nor did the receivership receive the slightest benefit from him or any one else for the transfer of the certificate.   Unless, therefore, the holders occupy the position, with reference to this certificate, of innocent assignees of negotiable or commercial paper, either under our statute, or at common law,

under the law merchant, it follows that whatever equitable defences would prevail as to the original payee would prevail as against them.

The decision might be placed on the single ground that the intervening petitioners are not in fact assignees, in any sense, of the receiver's certificate. They are simply what they represent themselves to be, viz: *bona fide* holders of the certificate for a valuable consideration. It was never indorsed to them by the payee by any writing on the back or otherwise. Such title as they have, passed to them by delivery. The certificate is made payable to a particular person named " or bearer," and the insistence is, that under our recent statute in relation to negotiable instruments, the holders may bring an action in their own names and be entitled to the same protection against defences as an assignee of a negotiable instrument before maturity under the former statute, without the indorsement in writing of the party named as payee. That proposition can hardly be maintained. The act of 1874, relied on, provides: " Any note, bond, bill, or other instrument of writing, made payable to bearer, may be transferred by delivery thereof, and an action may be maintained thereon in the name of the holder thereof."

In this case the certificate issued by the receiver was made payable to the party named " or bearer," without authority from the court from which he obtained authority to act in the premises. The order of the court was, it should be made payable to such person " or order." Of this petitioners must have been aware, for on the back of the certificate was a printed copy of the order of the court. But this is not a matter that affects materially the decision. The certificate is not made payable to " bearer." It is payable to a particular person by name " or bearer."

By our statute all notes, bonds, bills or other instruments in writing, made to any person or corporation, for the payment of money or articles of personal property, " shall be taken to be due and payable, and the sum of money or arti-

cles of personal property therein mentioned shall, by virtue thereof, be due and payable as therein expressed." Such instruments are only assignable, under our law, so as to enable the assignee to maintain an action in his own name, by the person named as payee, by indorsement thereon under the hand of such person. It makes no difference that such instruments contain, in addition to the name of the payee, the words "order," or "bearer." The recent statute has not repealed the former law, that made the indorsement under the hand of the payee necessary, so as absolutely to transfer and vest the property of negotiable instruments in the assignee.

But the decision may be placed on broader grounds, viz: that the certificate of the receiver, held by the intervening petitioners, is not commercial paper, and is not such an instrument as is assignable at common law or under our statute. Commercial or negotiable paper, either at common law, or under our law as declared by statute, has been so often defined that no extended discussion is necessary. An old case, declaring what instrument or writing constitutes a good bill of exchange according to the law, usage or custom of merchants, is *Dawkes* v. *Lorane,* 3 Wils. 207. The case is often referred to as an exposition of the common law as respects such paper. Although such an instrument need not be expressed in any certain form or set of words, yet it must have some essential qualities, without which it is not a bill of exchange. It is said: "It must carry with it a personal and certain credit given to the drawer, not confined to credit upon any thing or fund; * * * he to whom such bill is made payable or indorsed takes it upon no particular event or contingency, except the failure of the general personal credit of the persons drawing or negotiating the same."

The courts of this country have, with great unanimity, given the same general definition of negotiable instruments. This court, in *Baird* v. *Underwood,* 74 Ill. 176, said: "It enters into the definition of a promissory note, that the money must be payable at all events, not depending on any contin-

gency either in regard to the event or the fund out of which payment is to be made, or to the parties by or to whom payment is to be made." *Husband* v. *Epling,* 81 Ill. 172; *Mills* v. *Kuykendall,* 2 Black. 47; *Harriman* v. *Sanborn,* 43 Me. 128; *West* v. *Foreman,* 21 Ala. 400; *Corbett* v. *The State,* 24 Ga. 287.

The statute of this State makes all promissory notes, bonds, bills and other instruments in writing, whether for the payment of money or articles of personal property, assignable by indorsement thereon under the hand of the payee, in the same manner that bills of exchange are; but it is essential to the negotiability of such instruments that they must be payable absolutely and unconditionally, not depending on any contingency, either in regard to the event or the fund out of which payment is to be made, or as to the parties by or to whom payment is to be made. Otherwise such instruments are not assignable, either at common law or under our statute, so as absolutely to transfer and vest the property in the assignee and enable him to maintain an action in his own name. An instrument for the payment of money, not assignable or negotiable, as those words are used in the law, is subject to the same defences in the hands of the holder, notwithstanding he may have, in good faith, paid full value therefor, as could be made against the original payee.

Applying these well understood principles, it is apparent that receivers' certificates, such as the one found in this record, have not the essential qualities of negotiable or commercial paper. They are of recent introduction in business transactions, and have not been the subject of much judicial construction. The most that can be predicated of them is, that they are evidence in the hands of the holder that he is entitled to receive from the fund under the control of the court that authorized its officer to issue them, the amount specified, if the fund is sufficient to pay in full all holders of such certificates, or if it is not sufficient, then only a *pro rata* share with other holders. Nearly every quality essential to the negotiability of commercial paper is wanting in such cer-

tificates.   In the first place, they are not payable uncondi-
tionally out of any fund.   Whether, in any event, they are
payable in full, depends on the question, whether the fund
under the control of the court is sufficient for that purpose.
That fact can not be known except upon inquiry into the
amount of such certificates issued by the officer authorized to
act, and as to the value of the fund to be administered.   A
bill of exchange is not good when drawn payable out of a
particular fund that is uncertain and contingent.   The fund
out of which payment is to be made must be certain, as well
as the obligation of the maker or drawer.   *Dawks* v. *Earl of
De Loraine,* 2 Blackstone, 782.   Then, again, there is no per-
sonal liability upon any one for the payment of such certifi-
cates, and, as we have seen, one essential quality of negotiable
paper is the personal liability of the maker.

In *Mills* v. *Kuykendall, supra,* a draft by an heir upon the
administrator to pay a certain sum out of his share of the
estate was held not to be a bill of exchange, and the reason
assigned was, it was not drawn upon the general credit of the
drawer, but was only a request to pay out of a particular
fund.   English cases cited are to the same effect.   That is
precisely the case here.   Certificates of indebtedness, made
by a receiver under the direction of the court, binds no one
personally, nor can any action be maintained on such instru-
ments against any one.   Only the fund·or property under the
control of the court is bound, and that only when it is equita-
ble to charge such fund with the payment of the money
evidenced.   Such instruments not having the qualities of
negotiable paper, are not assignable under our statute, or as
at common law, so as to bar the equities existing against the
payees to whom they were issued.   The same conclusion was
reached by the court in *Bank of Montreal* v. *C. C. and W. R.
R. Co.* 48 Iowa, 518, where an analogous question was con-
sidered.

The conclusion reached rests upon legal principles that
have long been settled, but the rule deducible therefrom has

the strongest equitable considerations for its support. It usually appears on the face of such instruments by what authority they were issued, and for what specific purpose. Holders, therefore, will always be chargeable with notice of these facts. Considerations of the highest concern to all parties interested in the trust property make it imperative the court that charges the fund, through its appointed officer, should have the most vigilant care that the property is not improvidently wasted. All persons dealing in such securities must know that payment can only be coerced by application to the court having the control of the trust property for an order upon its acting officer. Such certificates have not been current in commercial transactions as bills of exchange and other negotiable paper, nor are they likely to become so. It is known they are issued only for the benefit of the trust property, and usually the specific purpose is mentioned on the face, or, as in this case, on the back of the certificate. The design is only to charge the trust property, and that only so far as it is equitable to do so. While courts will be zealous to protect the rights of parties who may have furnished money for the preservation of the trust property, equal care will be observed to see that the property is not wasted by improvident acts of receivers.

In this case the certificate was issued to a party to whom the trust property equitably owed nothing. It was transferred to the intervening petitioners as collateral security for his individual indebtedness to them. Equitably, the payee had no claim whatever on the trust property, and as the holders occupy his shoes, they stand in no better position in a court of equity where the fund is being administered.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*