H. B. WICKERSHAM, Assignee, etc.,

v.

CHARLES H. BEERS, Impl'd, etc.

1. INSTRUCTIONS—VERBAL ADMISSIONS.—An instruction that, "as a general rule, the statement of a witness as to the verbal admissions of a party should be received by the jury with caution, as that kind of evidence is subject to imperfection and mistake. The party himself may be misinformed or may not have clearly expressed his meaning, or the witness may have misunderstood him," *held*, to be a violation of section fifty-one of the Practice Act that " the court, in charging the jury, shall only instruct as to the law of the case."

2. NEGOTIABLE INSTRUMENTS—PROMISSORY NOTE—CONSIDERATION.— " We promise to pay you out of the first receipts of this stock, which we control as trustees, $2,148.93, and interest from June 19, 1884. C. H. Beers and Wm. H. Coney, trustees. Dated Chicago, November 19, 1884," not regarded as a promissory note, and therefore will not import a consideration.

3. EVIDENCE—BURDEN OF PROOF.—In a suit upon a promissory note, which imports a consideration, under the plea of want of consideration, the burden of proof will be upon the defendant to support his plea.

APPEAL from the Superior Court of Cook county ; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.   Opinion filed October 27, 1886.

This was an action brought by appellant Wickersham, as assignee, under the provision of the statute concerning voluntary assignments, etc., of Mark D. Shay, against appellee Beers and one Coney, Beers alone having been served with process.

The declaration contained two special and the common counts.   The first special count was upon a promissory note, alleged to have been made by Beers and Coney, bearing date June 19, 1884, whereby they, for value received, promised to pay to said Shay, thirty days after date, the sum of $2,148.93, with interest from date, which note had been destroyed by Beers or Shay, so that it could not be produced.   The second special count alleged the borrowing by defendants of said Shay said sum of money, for which the former gave said Shay an

instrument in writing which has since been destroyed, bearing said date, whereby they promised to repay to said Shay said sum, with interest, out of the first moneys they received from the sale of a stock of goods formerly owned by said Shay.

A plea of the general issue in assumpsit was filed by Beers' attorneys, by one of whom the plea was verified by affidavit. And on the trial, the court permitted the defendant to file a further plea of want of consideration.

There was a trial resulting in a verdict and judgment for defendant, and the plaintiff prosecutes this appeal.

It appeared on the trial that said Shay, being a wholesale dealer in boots and shoes, in Chicago, and in debt in about the sum of $80,000, became insolvent, and June 2, 1884, a judgment by confession was entered up by the National Bank of Illinois against him for the sum of $5,457.76, on which execution issued, and was, on that day, levied on his whole stock. He also confessed judgments on the same day in favor of appellee Beers, said Coney, one Dysart and H. B. Erskine, respectively, for sums aggregating about $25,000, on which executions were issued and levied on the same day, but after that of the bank, upon the same goods.

It appeared that these several judgments were all for money borrowed by said Shay, and that he owed divers other creditors large sums for merchandise by them sold and delivered; that the sheriff began selling the goods upon the execution in favor of said bank, when an arrangement to prevent sacrifice of them was entered into June 17, 1884, between all the judgment creditors, except said bank, by which said Beers and Coney were for themselves, and as trustees for Dysart and Erskine, to bid off at sheriff's sale, all of said stock remaining unsold, at a price not to exceed the aggregate amount of all of said judgments, including that in favor of said bank, and that said Beers and Coney might take the title to the goods and property they might so purchase at said sale, in their own right, to the extent of their proportionate interests as such judgment creditors and as trustees for the other judgment creditors (Dysart and Erskine) in proportion to their respective interests; "it being understood that each of the judgment

creditors shall acquire an equitable interest in the goods so purchased by the said trustees, in proportion to the amount of the actual and real claim of each of them respectively, against the said Shay, on account of which each of their respective judgments were entered up." This agreement provided for the manner in which the said trustees, Beers and Coney, should dispose of the goods and apply the proceeds. It appeared that said bank, refusing to become a party to said arrangement, but having a first lien, insisted upon having its judgment immediately paid. June 21, 1884, the sheriff sold the whole stock, and Beers and Coney became the purchasers under said arrangement, at an aggregate sum of about $20,000, the precise sum being not very clearly shown. About the same time, or soon thereafter, they received from Shay the sum of $2,148.93, which he had collected upon outstanding accounts in his favor, and which he let Beers and Coney have, and they applied it on the judgment of the bank against him, as aforesaid. Whether that was a loan by Shay to Beers and Coney, or whether he paid the money, through their hands, on said judgment, were controverted questions on the trial, as to which the testimony was conflicting. It appears, however, without conflict, that Beers and Coney, upon receiving said money from Shay, gave him an instrument in writing respecting the repayment to him of that money. But the paper having been surrendered and destroyed, the evidence describing it was conflicting. There was evidence tending to show that it was an absolute promise to repay the money to Shay in thirty days, with interest. It appeared that July 9, 1884, Shay made an assignment in pursuance of the statute, for the benefit of his creditors; that afterward, Nov. 19, 1884, he surrendered up said instrument to Beers, and the latter and Coney made another in these words:

"M. D. SHAY: We promise to pay you out of the first receipts of this stock, which we control as trustees, $2,148.93 and interest from June 19th, 1884.

C. H. BEERS, } Trustees.<br>WM. M. CONEY, }

Dated Chicago November 19th, 1884."

There was evidence tending to show that this latter instrument was identically the same as the former one except as to date.

The plaintiff testified to verbal admissions made to him by defendant, Beers, tending to establish an acknowledgment of liability on his part for said money received by him and Coney from Shay. Plaintiff also called as a witness the stenographer who took down the testimony of said Beers, taken in a proceeding in the county court, and who, refreshing his recollection by his notes, testified that Beers on that occasion testified that he and Coney borrowed the money in question of said Shay, and gave their promissory note therefor, payable in thirty days from the date of it, which was the note Shay surrendered to him.

Beers did not offer himself as a witness on the trial of this present case, and introduced no evidence as to said admissions on his part.

The court, at the instance of counsel for Beers, gave to the jury the following instructions:

1. "The court instructs the jury that although parol proof of the verbal admissions of a party to a suit, when it appears that the admissions were understandingly and deliberately made, often afford satisfactory evidence, yet as a general rule, the statement of a witness as to the verbal admissions of a party should be received by the jury with caution, as that kind of evidence is subject to imperfection and mistake. The party himself may have been misinformed, or may not have clearly expressed his meaning, or the witness may have misunderstood him. But it is the province of the jury to weigh such evidence and give it the consideration to which it is entitled in view of all other evidence in the case."

2. "If the jury believe from the evidence that Coney and Beers received the sum of money in question in this suit, as trustees under the terms of the trust introduced in evidence, and that they used said sum of money, as such trustees, in liquidation of the indebtedness of said Mark D. Shay, which they assumed by said trust, then they are not liable to the plaintiff in any sum, and your verdict should be for the defendant."

Wickersham v. Beers.

3. "The court instructs the jury, as a matter of law, that the burden of proof is upon the plaintiff, and it is for him to prove his case by a preponderance of the evidence. If the jury find that the evidence bearing upon the plaintiff's case is evenly balanced, or that it preponderates in favor of the defendant, then the plaintiff can not recover, and the jury should find for the defendant."

Messrs. TRUMBULL, WASHBURNE & ROBBINS, for appellant; that the sole issue upon which there was a trial was that raised by the plea of want of consideration and upon that issue the burden of proof was upon the defendant, cited Stacker v. Watson, 1 Scam. 209 ; Mitchell v. Deeds, 49 Ill. 420.

Mr. WM. J. MANNING and Mr. P. V. CASTLE, for appellee ; that the filing the plea in question did not have the effect to change the burden of proof as claimed by appellant, cited Holmes v. Karsper, 5 Binney, 469; Thomas v. Newton, 2 Carrington & P. 606 ; Rogers v. Morton, 12 Wendell, 484.

McALLISTER, P. J. It is an express declaration of section 51 of our Practice Act, that "the court in charging the jury, shall only instruct as to the law of the case."

We regard the first instruction on behalf of the defendant below, as violative of that provision. The court thereby told the jury that, "as a general rule, the statement of a witness as to the verbal admissions of a party should be received by the jury with caution, as that kind of evidence is subject to imperfection and mistake. The party himself may be misinformed, or may not have clearly expressed his meaning, or the witness may have misunderstood him."

While it is true that text writers upon the law of evidence and judges of courts may have indulged in such observations as to the quality, value and weight of that species of evidence called verbal admission, yet there is no such rule of law as that laid down by the court in this instance, which would warrant the court in so giving it to the jury as law.

The instruction, in this respect, trenched upon the province.

of the jury as to vital points in the case.   The jury would naturally understand the rule stated by the court to apply to the testimony of the stenographer, as well as to that of the plaintiff.   Rafferty v. The People, 72 Ill. 45.

The second instruction for the defendant was, in our opinion, faulty and fatally defective.   It told the jury that if they found from the evidence "that Coney and Beers received the sum of money in question in this suit as trustees under the trust introduced in evidence, and that they used the said sum of money, as such trustees, in liquidation of the indebtedness of said Mark D. Shay, which they assumed by said trust, then they are not liable to the plaintiff in any sum, and your verdict should be for the defendant."

The theory of plaintiff's case, and which his evidence tended to support, was that they borrowed that money of Shay for their own personal benefit, promising to repay it with interest, by giving their individual promissory note therefor, dated June 19, 1884, payable in thirty days from that date.   The instruction contained no hypothesis excluding that theory. Coney and Beers were to, and did, under the trust agreement, with the other two creditors having executions junior to that of the bank, like their own, acquire individual interests in the goods sold under the execution in favor of the bank and bought by them, subject to the prior rights of the bank, and incurred individual liabilities in respect thereto.   If, therefore, under these circumstances, they borrowed the money of Shay under an absolute promise, on their part, to repay it to him in thirty days, we can perceive no reason why the loan itself would not afford a good and valid legal consideration to support that promise.   That instruction was also calculated to mislead the jury, by the rather imperative direction at the end of it, that the verdict of the jury should be for the defendant. Roach v. The People, 77 Ill. 25.

By the third instruction for the defendant, the court told the jury as matter of law, that the burden of proof was upon the plaintiff, and that it was for him to prove his case by a preponderance of the evidence.   "If the jury find that the evidence bearing upon the plaintiff's case is evenly balanced,

or that it preponderates in favor of the defendant, then the plaintiff can not recover, and the jury should find for the defendant."

This instruction likewise ignores the plaintiff's theory of Beers and Coney having borrowed the money of Shay and given him their promissory note for the repayment of it in thirty days.

If, instead of that, the instrument which they gave Shay, June 19, 1884, was identical with that given November 19, 1884, except as to date, we are inclined to think that, under the rules stated in Turner v. Railroad Co., 95 Ill. 134, and cases there cited, such instrument could not be regarded as a promissory note, and would not, therefore, import a consideration. If that was the character of it, then under the plea of want of consideration, the plaintiff would be subject to the burden of proving one, in order to recover upon the instrument itself. But if, on the other hand, such instrument was in fact and in law a promissory note, it would import a consideration, and under the plea of want of consideration, the burden would be upon the defendant to support his plea.    1 Wait's Actions and Defenses, 563, and cases there cited.

The instruction recognizes none of these distinctions, and was therefore misleading and erroneous.

For the errors indicated the judgment below must be reversed and the cause remanded.

Judgment reversed.