Strong v. State.

### LESTER M. STRONG V. STATE OF NEBRASKA.

FILED DECEMBER 5, 1900.   No. 11,449.

1. **Instruction:** DISPARAGING SUGGESTIONS: PROVINCE OF JURY: IM-
PEACHING TESTIMONY. An instruction pregnant with disparaging
suggestions not based upon the evidence and invading the prov-
ince of the jury by undertaking to fix for them the probative
value of impeaching testimony is erroneous.

2. ———: HYPOTHETICALLY UPON FACTS. A court should instruct hy-
pothetically upon the facts which the evidence tends to prove,
and permit the jury to make their own deductions and decide
for themselves whether witnesses are credible and whether their
testimony is forceful or weak.

ERROR from the district court for Buffalo county.
Tried below before SULLIVAN, J. *Reversed.*

*Hamer & Hamer, R. A. Moore* and *H. M. Sinclair,* for
plaintiff in error.

*Constantine J. Smyth, Attorney General,* and *Willis D.
Oldham, Deputy, contra.*

SULLIVAN, J.

The plaintiff in error, having been convicted of an
assault with intent to commit a rape upon Caroline Han-
sen, was, by the district court of Buffalo county, sen-
tenced to imprisonment in the penitentiary for a period
of seven years. It appears from the record that on the
evening of November 12, 1899, between eight and half
past eight o'clock, the prosecutrix was violently as-
saulted by a young man who had, by falsehood and de-
ceit, induced her to get into his buggy and ride with him
to the outskirts of the city of Kearney. On the follow-
ing morning the defendant was arrested and brought into
the presence of Miss Hansen, but she then failed to recog-
nize him as her assailant. It was on the trial virtually
conceded that a crime had been committed, and the real
question in controversy was whether the prisoner was
the criminal. The prosecutrix testified that he was the
man who assaulted her, and denied that she had on a

previous occasion stated in the presence of Anna and
Hattie Wilson that she was unable to identify him.  The
Wilsons being called as impeaching witnesses testified
that Miss Hansen had made the imputed admission.  At
the conclusion of the trial the court was asked to charge
the jury on behalf of the defendant that the testimony
of the Wilsons should be considered, tested and its worth
estimated under the rules and by the standards applica-
ble to the testimony of other witnesses.  This request
was refused, but in its stead the court gave instruction
number 8, which is as follows: "The witnesses Mrs. and
Miss Wilson have testified to facts tending to show that
the prosecuting witness made statements to them, or in
their presence, concerning the identity of her alleged
asasilant different from those made in her testimony.
You should consider the testimony of these witnesses.
If the prosecuting witness outside of court has volun-
tarily made statements concerning the identity of her
alleged  assailant different from those made in court,
then this should have the effect of weakening her testi-
mony here with you and should be given the effect of
weakening her identification of the defendant made here
in court in your presence.  The extent to which such
statements, if any, made out of court weakens her testi-
mony here is for you to determine.  If you believe from
the evidence that the alleged statements were clearly
and understandingly made by the prosecuting witness
to the Wilsons, and that they have been accurately re-
membered and correctly and fully related by the said
witnesses in their testimony, then the testimony of the
Wilsons should be given great weight as tending  to
break down and destroy the testimony of the prosecuting
witness as to the identification of the defendant.  But if
it appear that the Wilsons have not correctly remembered
the statements of the prosecuting witness, or if she at
the time did not clearly express the thought in her mind,
or if the Wilsons did not correctly understand her, or
if they have intentionally misquoted what she said, or

have been influenced to believe that she made statements which she did not make, then the force of their testimony would not be so great." The giving of this instruction was, in our judgment, prejudicial error. The statement which it is claimed the prosecutrix made to the Wilsons was in relation to a matter which was not only relevant to the issue, but of vital importance; and the defendant was entitled to have the evidence of these witnesses go to the jury without comment calculated to depreciate or discredit it, and free from any intimation that the presiding judge viewed it with suspicion. The instruction was pregnant with disparaging suggestions; it was not based upon the evidence, and it invaded the province of the jury by undertaking in a vague way to fix for them the probative value of the impeaching testimony. There is nothing whatever in the record to indicate that the Wilsons had been induced to believe what was not true, and yet the jury were by the instruction authorized to find that their story was an invention of some one hostile to the state and that they were unconscious of its real character. In *St. Louis, A. & T. H. R. Co. v. Huggins,* 20 Ill. App., 639, the court instructed the jury that if they believed that employees of the defendant company had testified under fear of losing their employment, that fact might be considered in weighing their evidence. This instruction was held to be reversible error, there being no evidence to support the existence of such fear. *Lewis v. Christie,* 99 Ind., 377; *Zenor v. Johnson,* 107 Ind., 69; *Wickersham v. Beers,* 20 Ill. App., 243, and other cases, lay down the rule that it is error to caution the jury that admissions are liable to be misunderstood, incorrectly remembered or inaccurately reported. Many of our own decisions hold, and the rule is believed to be universal, that instructions must be based upon and applicable to the evidence. It is also the doctrine of most of the state courts that instructions should not be argumentative, nor interfere in any way with the freedom of the jury in determining the weight of the evidence or the credibility

of the witnesses. *Walrath v. State*, 8 Nebr., 80; *Heldt v. State*, 20 Nebr., 492; *Long v. State*, 23 Nebr., 33; *Johnson v. State*, 34 Nebr., 257; *Argabright v. State*, 49 Nebr., 760; *Burnet v. Cavanagh*, 56 Nebr., 190; *Chase v. Buhl Iron Works*, 55 Mich., 139; *In re Stickney's Will (Fox v. Martin)*, 104 Wis., 581, 80 N. W. Rep., 921. In the last mentioned case Marshall, J., delivering the opinion of the court, took occasion to remark, page 587, that an "argumentative discussion of principles, full of suggestions as to evidentiary facts, pointing to their probable existence, though there be no evidence to support that view, is quite likely to result in a miscarriage of justice, especially where the situation of the parties is such as to stimulate sympathy for the one and prejudice against the other. In such circumstances juries will easily reach a conclusion that suggested probabilities in favor of the weaker party exist and are of sufficient probative power to warrant a finding of the existence of the ultimate fact in issue." These views of the learned judge meet our approval and seem quite applicable to this case. The proper course is to instruct hypothetically upon the facts which the evidence tends to prove, and to permit the jury to make their own deductions and decide for themselves whether witnesses are credible and whether their testimony is forceful or weak. The office of a charge in our procedure is to state pertinent principles of law, rather than to point out the logical force or infirmities of the proof. Special instructions designed to aid the jury in determining what facts the evidence proves are, like some elaborate definitions of a reasonable doubt, of questionable utility in most cases and often positively mischievous.

Other questions have been discussed by counsel, but as none that seem worthy of special notice are likely to arise on another trial, we do not think it necessary to pass upon them.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.