## The People of the State of Illinois for use of Mary Bothman, Sarah Landau, City National Bank of Murphysboro and First National Bank of Murphysboro, Illinois, Appellants, v. James W. Brown and the Title Guaranty & Surety Company, Appellees.

1. CLERKS OF COURTS, § 25*—*who protected by bond of county clerk.* The bond of a county clerk protects not only the county but also the interests of persons who may be injured by his official acts.

2. COUNTIES, § 75*—*when county clerk does not act officially in negotiating order wrongfully issued to himself.* A county clerk does not act officially in negotiating and selling county orders wrongfully issued in his own favor without an order from the board of supervisors.

3. COUNTIES, § 75*—*when issue of order in own favor official act of clerk.* The issue by a county clerk in his own favor of county orders without an order from the board of supervisors, with his seal attached thereto, *held* an official act.

4. COUNTIES, § 75*—*when cause of obtaining money wrongful issue of county order by clerk.* The official act of a county clerk in the issuing, without an order from the board of supervisors, of orders in his own favor, and not the negotiation and sale thereof, *held* the efficient cause of procuring money on them.

5. CLERKS OF COURTS, § 25*—*when county clerk's sureties liable for money obtained on illegal orders.* Sureties on the official bond of a county clerk *held* liable to a person who purchased from the clerk county orders wrongfully issued by him in his own favor without an order from the board of supervisors.

Appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded with directions. Opinion filed July 21, 1915.

ISAAC K. LEVY, MARTIN & GLENN and JOHN M. HERBERT, for appellants.

DENISON & SPILLER, for appellees.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice McBride delivered the opinion of the court.

This action was upon the official bond of James W. Brown as county clerk of the county of Jackson, against said Brown and his surety, the Title Guaranty and Surety Company.

The defendants filed a demurrer to plaintiff's declaration. The demurrer was sustained and plaintiff elected to abide by his declaration, and judgment was rendered against the plaintiff for costs.

The declaration is in the usual form and avers the giving of said bond as county clerk on August 25, 1910; its approval, and that said bond provides that if the said James W. Brown should faithfully discharge the duties of said office and pay over all moneys received by him as such officer, and render a just and true account of the same when thereupon required by law and well and truly perform all and every act enjoined by him according to the laws of Illinois, to the best of his skill and ability, then said writing obligatory was to be void, otherwise to remain in full force.

The declaration avers that it then and there became the duty of said Brown as such clerk to well and truly perform all and every act enjoined upon him by the laws of the State of Illinois, and as such county clerk to draw or issue no county orders or warrants against the revenue of said county on the treasurer of said county unless ordered and authorized to do so by the board of supervisors of said county. It is further averred that the said Brown did not perform his duty in this regard but during his said term of office as county clerk issued a large number of county warrants and orders against the revenue of the county on the treasurer thereof, aggregating the amount of towit, $20,000, without being ordered or authorized to do so by the county board and without any right to do so.

The declaration then avers the issuing to himself of thirty-one county orders, copies of which are filed

with the declaration and made a part thereof, which were, for value received, severally sold to the uses herein. A special breach is contained in said declaration for each order. The first special breach assigned is as follows: "That the said James W. Brown as county clerk of said county of Jackson, on to wit, the 17th day of September, A. D. 1912, did make and issue a certain county order, or warrant, of said County of Jackson, payable to himself or bearer, drawn on the Treasurer of said county for the sum of two hundred and fifty dollars, from the fees and salaries fund of said county, payable out of county tax of 1912, already levied, when collected, and that the said James W. Brown at that time on said account, nor is there county order, or warrant, to the said Mary Bothman, and the plaintiff avers that at the time of the making and issuing of said county order, or warrant, the same had not been ordered or authorized by the County Board of Supervisors of said county, nor was there anything due from the said county to the said James [W. Brown at that time on said account, nor is there now anything due him from said county on said account." The other special breaches are, in substance, the same as above except as to dates, amounts and parties to whom transferred. To said declaration the following amendment was made: "That the usees herein, and each of them was then and there induced to purchase said county orders and each and all of them by reason of the said James W. Brown, County Clerk as aforesaid, representing to each of them, the said usees, that there was then at the time said orders were respectively sold and delivered to them, due him, the said Brown, as County Clerk of said county, the said several sums in each of said orders respectively stated and represented, for fees and salaries as such County Clerk, out of the fees and salaries fund of said County." The declaration then avers the debt to be $5,000 and damages $5,000. To this declaration the defend-

ants interposed several demurrers, which were sustained by the court. The plaintiff abided by the declaration. The court gave judgment against the usees, to which exceptions were preserved.

The appellants seek a reversal of the judgment because of the decision of the lower court sustaining the demurrer to the declaration. Counsel for appellee in stating their position say: "We contend that the declaration in this case does not state a good cause of action, because the sale of the warrants to the usees was not an official act, but was the clerk's own private speculation and transaction which was no part of his official duty, and which the law did not require him to do in the performance of his official duty, and therefore his surety is not liable." Counsel for appellee further state that it appears the warrants have not been paid and the county not damaged, and lost nothing by reason of the negotiations of these orders; that: "This is an essential and material matter to be kept in mind throughout this argument."

It is the contention of appellee that the declaration does not state a cause of action: First, because the county has lost nothing by the transaction, and that the bond does not protect these individuals even if they were injured in these particular transactions; second, that the acts of the clerk, at least that of selling and assigning the warrants, was not an official act, and "the thing that caused the injury, if one has been sustained, to the usees, was not the issuance of the warrants but the transfer or sale of them by Brown in his private capacity as contra distinguished from his official capacity;" and then urges that the efficient cause which led to the obtaining of the money was the acts of the clerk in negotiating or selling the warrants and not the issuing of the warrants.

If it be true as contended by counsel for appellee that the bond given by the county clerk was principally for the protection of the county and not for the protection

of individuals transacting business with the clerk, such as the appellants were, then there is no occasion for any further consideration of this case. We do not agree with such contention, but are of the opinion that the bond is given to protect not only the interests of the county, but to protect the interests of any one who may be injured by the official acts of the clerk. ''The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit, except for its appearing to be a regular official act, is within the protection of the bond and must be made good by those who sign it.'' Murfree on Official Bonds, sec. 211. ''His sureties on his official bond are liable for any failure on his part to perform an official duty, to any person suffering injury thereby.'' *Governor v. Dodd,* 81 Ill. 162. Where the county clerk takes the acknowledgment of a deed and gives a false certificate of acknowledgment, he will be liable upon his official bond to any one injured thereby. *People v. Bartels,* 138 Ill. 322. We are of the opinion that any person injured by the official act of an officer is protected by such officer's bond.

The next question to be considered is: Were the acts of the County Clerk Brown in the issuing of the warrants or orders and selling of the same official acts? We do not believe that the act of negotiating and selling the warrant was an official act, but we are of the opinion that the act of issuing the warrant or order purporting to be issued by order of the board of supervisors, and the attaching of the seal to the order was an official act. ''By an official act is not meant a lawful act of the officer. * * * It means any act done by the officer in his official capacity, under color and by virtue of his office.'' *Turner v. Sisson,* 137 Mass. 191; *Horan v. People,* 10 Ill. App. 21; Mechem on Public Officers, sec. 284, and authorities cited in notes. The object of requiring official bonds is to obtain in-

demnity against the use of an official position for wrongful acts done under color of office. *People v. Treadway,* 17 Mich. 480; *Campbell v. People,* 154 Ill. 601.

Where the county clerk issued orders payable to himself that were unauthorized, such are within the rule and classed as official acts. ''And the fifth class of demands, consisting of unauthorized county orders issued by Dunlap payable to himself, stands upon the same footing. The issuing of county orders were official acts, and making them payable to himself did not change the official into individual acts of the clerk.'' *Spindler v. People,* 154 Ill. 639. So we cannot help but arrive at the conclusion that the issuance of the orders in question by Brown to himself were official acts for which the defendants would be liable to any person injured thereby, unless the act of negotiating and selling the orders and warrants by the clerk was of a character to relieve appellees from such liability.

It is strenuously insisted by counsel for appellees, ''that in negotiating or selling warrants the clerk is acting not in an official capacity but in a private one, and that this is the efficient cause or thing that produced the injury and not the wrongful or fraudulent issuance of the order.''

And in support of this contention refers to cases of *State v. Harrison,* 99 Mo. App. 57, and that of *National Surety Co. v. State Sav. Bank,* 84 C. C. A. 187, 156 Fed. 21, which seem to adopt the view contended for by appellees. In arriving at its conclusion, however, the court in the latter case says: ''The orders in question were apparently lawfully drawn, lawfully countersigned, and genuine. The natural and probable consequence of their issue was their presentation to the treasurer, to whom they were addressed, and payment of them by him. The statutes of the State made it his duty to pay authorized orders of that kind. The surety company was liable to the county,

because the presentation to the treasurer and the payment of the orders by him were the natural and probable consequence of their issue, and might have been reasonably anticipated by any prudent person. Right here is the radical and decisive difference between the position of the county and that of the bank. While the payment by the county was, in the ordinary course of business, reasonable and probable, the purchase of the orders by the bank on the assignments made in the name of myths by Bourne was not the natural or probable consequence of their issue. No one could have reasonably anticipated that a bank or any rational person would disregard the law which makes a non-negotiable chose in action in the hands of an assignee subject to every defense existing in favor of the maker or purchase a non-negotiable order of the kind in question, and pay the purchase price thereof to one who was not the payee named therein without inquiring into the genuineness of the assignment and the genuineness of its execution. Such a purchase would be out of the ordinary course of business, unnatural, improbable, incapable of anticipation, and in no legal sense the natural and probable consequence of the issue of the orders. For these reasons the purchase by the bank cannot be held to have so resulted from the 'misconduct in office' of Bourne as to subject the surety company to liability to the bank for any loss it might have sustained by reason of its purchase." It will be observed that the Federal Court in arriving at its conclusion in the case above quoted was influenced, and say so in their opinion, by the fact that the transfer of these orders to the bank was not the reasonable or probable course that such orders would take. While such may have been the law or rule in Minnesota, we do not understand it to be the rule or improbable result under the decisions of our court of the issuance of an order that it will be transferred to a bank or other person. In speaking of orders issued

by the county clerk of Cook county, and in commenting upon the effect of the issuance of such orders, our Supreme Court says: "Nevertheless, in many of the States, including our own, it has become quite common in business transactions to transfer these instruments by written indorsements, in the same manner as if commercial paper, and this usage or custom prevails to such an extent that many courts of the highest respectability have recognized the validity of such assignments, for the purpose, simply, of enabling the assignee to sue in his own name, saving to the municipality all equities and defenses which would be available if the suit were brought in the name of the original payee. We perceive no substantial objections to this doctrine, and it is believed that public convenience will be promoted by its recognition. Indeed, the principle has already been recognized by previous decisions of this court. · *Newell v. School Directors,* 68 Ill. 514; *Turner v. P. & S. R. R. Co.,* 95 Ill. 134;" *People v. Johnson,* 100 Ill. 548.

Owing to the well recognized usage of our people in the transfer and purchase of orders or warrants of this character, especially when issued at a time when there is no money in the treasury, and the tax levied, but not collected, we do not believe that it would be unreasonable or improbable to assume that such an order would be presented to a bank or any other person having the means wherewith to purchase such order; and one of the principal matters depended upon by the Federal Court in arriving at the conclusion it did in the foregoing opinion, in our judgment, has no application to the laws and customs of Illinois. Besides, that was not an action upon the bond but was an action brought by the surety company to be subrogated to the rights of the County, after such surety had been compelled by virtue of its suretyship to pay money into the county treasury that had been taken therefrom by the State's Savings Bank. The princi-

ples announced as to the fictitious ·orders and their transfer were in the argument of the case and not in a decision of the question here involved. We do not believe that the negotiation of these warrants were the efficient cause in procuring the money from appellants. The prime cause, and the one that was always present and acting, and without which nothing could have been accomplished by the clerk in the way of obtaining the money, was the issuing and presenting of a false order under the seal of the county clerk and purporting to have been issued by authority of the board of supervisors. We cannot understand how the sureties of a clerk who has committed a wrongful act in his official capacity can be released from liability for such wrongful act by his further continuing the wrongful act until he obtains that for which the first act in the series was perpetrated. The object of the giving of this bond was to protect persons from injury who transacted business with the clerk in his official capacity; and while it is true that the sureties are only liable for acts coming within the letter and spirit of their obligation, we believe that the issuing of these warrants and obtaining the money upon them was an act both within the spirit and meaning of the bond, and that the surety is liable for such injuries as these people may have sustained by reason thereof.

We are of the opinion that the court erred in sustaining the demurrer to the declaration, and the judgment of the lower court is reversed with directions to overrule the demurrer.

*Reversed and remanded with directions.*